Richard J. Daley, Local Liquor Control Commissioner, Plaintiff-Appellant, v. License Appeal Commission, et al., A. L. Cronin, Chairman and 11 E. Ohio Corporation, Licensee, Defendants-Appellees.

Gen. No. 49,963.

First District, Third Division.

September 16, 1965.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Dominick P. Dolci, Assistant Corporation Counsel, of counsel), for appellant.

Paul C. Ross, of Chicago (Harry S. Weber, of counsel), for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The Local Liquor Control Commissioner of the City of Chicago appeals from a judgment of the Circuit Court which affirmed a decision of the License Appeal Commission. The commissioner had refused to issue a retail liquor license to the 11 E. Ohio Corporation on the grounds that the tavern at the location sought to be licensed had a notorious reputation and that the president of the corporation, Maurice Ohren, lacked good moral character. The corporation appealed to the commission which, after a trial de novo, reversed the commissioner and denied his motion for a rehearing.

Two witnesses testified before the commission at the hearing which was held in February 1964: a police officer of the City of Chicago and the president of the corporation. The officer had investigated the corporation's application and had made the recommendation to his superiors that resulted in the disapproval of the application. He said that he had no personal knowledge of the facts, but that his recommendation was

based entirely on documents in the files of the Chicago Police Department. The documents were introduced into evidence.

For the most part the exhibits are copies of complaints made to, and reports made by, the police department from March 1950 through March 1963 concerning prostitutes frequenting the Berkshire Lounge in the Berkshire Hotel at 11 East Ohio Street. The exhibits are 18 in number. The most important of these show that three arrests were made on the premises. In 1956 an alleged prostitute was arrested and the bartender was taken into custody. No disposition of the arrest is indicated. A recommendation was made by someone that the license be revoked, but the exhibit only shows that Ohren was called in and warned. In 1961 a female employee, who was a minor, was arrested. The disposition of the arrest is not shown. In May of 1962 Ohren was again warned and in November 1962 the tavern was raided and 7 persons were arrested. However, the latter exhibit is marked "cleared." Apparently, as a consequence of this raid the tavern's license was revoked in December 1962. In 1963 the revocation was reversed by the Circuit Court. The license period had ended by this time and an application was made for another license. The denial of this application is the subject matter of the present case.

Many of the remaining exhibits are meaningless, duplicative or irrelevant. There are anonymous complaints and there is nothing to indicate whether they were investigated or what disposition was made of them. Four or five others are reports which show that either no action was taken on the reports or that investigations were made resulting in such words as "unfounded," "no violations," "cleared" or "no activity" appearing on the reports. Two exhibits are

46

duplicates; two others are related to but one complaint and another pair is likewise related; another exhibit states "conditions not corrected" but does not say what the conditions were, and still another is the local liquor commissioner's order of December 1962 closing the tavern. Two of the exhibits have no connection with the tavern at 11 East Ohio Street. One of these, dated January 21, 1963, is a report concerning prostitution in room 1614 of the Devonshire Hotel; the second, dated March 26, 1963, is a vice complaint about the same hotel. Moreover, as we have seen, the tavern was not in operation in 1963. It was closed on December 19, 1962, and has remained closed up to the present time.

As to Maurice Ohren, the record is even less consequential. The officer said that his investigation revealed that Ohren had been arrested twice for disorderly conduct, once in 1951 and once in 1952. In both cases he had been discharged. Ohren testified that he had operated the tavern for 19 years and that neither of his arrests concerned the tavern or took place on the premises. He explained that in both instances he was asked to come to a police station where he was questioned about occurrences that had nothing to do with the tavern. Upon completion of the questioning a disorderly conduct charge was placed against him. In each case he was found not guilty the following day.

The License Appeal Commission, after hearing the testimony and examining the exhibits here described, found that the license application had been improperly denied. After reviewing the record the Circuit Court came to the conclusion that the decision was not against the manifest weight of the evidence and upheld the commission's finding.

The applicable statute is section 8 of article VII of the Dram Shop Act (Ill Rev Stats 1963, c 43, par 153)

which states, in reference to an appeal from an order refusing to grant a license:

"In the event such appeal . . . the matter of the propriety of such order . . . shall be tried de novo by the license appeal commission. . . .

". . .

"If after trial de novo hearing . . . the license appeal commission . . . shall decide that such license has been improperly . . . denied . . . it shall enter an order in conformity with such findings. . . ."

██ ██ The commissioner argues that upon a trial de novo the sole issue to be considered is the propriety of his action in refusing to grant a license; that he has the exclusive right to pass upon the qualifications of an applicant and that it is his duty and right to exercise his discretion. While this is substantially true, the discretionary power must be reasonably exercised; and the issue on appeal is whether the commissioner abused his discretionary power and whether he acted arbitrarily and without good cause. Day v. Illinois Liquor Commission, 39 Ill App2d 281, 188 NE2d 883; Daley v. License Appeal Commission, 11 Ill App2d 421, 138 NE2d 73.

 It must be remembered that the trial before the commission is a new trial and not a review of any prior record. The commissioner may have had reasons for denying the application which were unknown to the commission, but the latter must base its decision on the evidence presented to it and must decide, in the light of this evidence, whether the commissioner's discretion was reasonably exercised. In examining the propriety of the commissioner's order the commission must also consider the relevancy of the evidence to the grounds given for denying the application. Proof

48

that a licensee sold liquor to minors would not be relevant to the ground that he did not observe closing hours; proof that gambling was permitted on the premises would not support a finding that solicitation for prostitution was allowed. Likewise, proof that a licensee was charged with disorderly conduct is not proof that he lacks good moral character; complaints and police reports are not of themselves proof that a tavern has a bad reputation.

 In the present case there was no testimony at all as to the tavern's reputation and there was none as to Ohren's character. Reputation is the estimation in which a person or thing is commonly held, what the people of the community think or say about a person or thing. Character is the moral quality of a person which constitutes his intrinsic nature. Although the words "reputation" and "character" are often used interchangeably, reputation is the character commonly imputed to a person. Bad reputation is not established by three arrests made over a period of years—arrests that, as far as the evidence disclosed, did not result in convictions. Reputation is not shown by anonymous complaints, by reports that are admittedly unfounded or by unsubstantiated reports. And an individual's lack of moral character is not established by the fact that he was twice arrested and as many times acquitted of the minor offense of disorderly conduct.

 The most damaging inference that can be drawn from the exhibits as a whole is that prostitutes were frequently in the tavern. While it might be induced from this that the tavern *should* have a bad reputation there was neither evidence nor testimony that it *did* have such a reputation. If the tavern was notorious (that is, widely and unfavorably talked about) there should have been available police officers or other witnesses who could have so testified. Similarly, if women of ill repute were permitted to use the tavern

to solicit for prostitution an inference could be drawn that the licensee was deficient in moral character, but in this case there was no such proof.

The order of the License Appeal Commission and the judgment of the Circuit Court are affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.