Samuel A. Goode, Plaintiff-Appellee, v. James M. Thomas, Mayor of the City of Ottawa, et al., Defendants-Appellants.

(No. 74-262; )

Third District—September 3, 1975.

John Hayner, of Warren, Hayner & Baxter, of Ottawa, for appellants.

John Wolslegel, of Wolslegel & Armstrong, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The City of Ottawa and its mayor, James M. Thomas, appeal from a judgment order of the Circuit Court of La Salle County directing the issuance of a writ of mandamus to compel the mayor to grant a Class B retail liquor license to Samuel A. Goode, appellee.

The determinative facts, as found by the trial court, are not disputed on appeal. Goode purchased a hotel and adjacent empty tavern building in August of 1973. After commencing to remodel the hotel, he filed his application and bond for a liquor license for the tavern premises. Mayor Thomas informed him that all 36 licenses allowed by ordinance were

then outstanding, but that he would receive the next available license and that the mayor believed Mr. Dunn was going out of business and would surrender his license soon. In November, 1973, after receiving additional assurances from the mayor that he would soon receive a license, Goode began to remodel the tavern, expending $3,300 plus his personal labor. Thereafter, Goode received offers to sell outstanding licenses from four license holders for sums of $10,000, $7,500, $5,000 and $2,500 respectively. At one time Goode and a licensee agreed to the sale of a license for $1,000, and Mayor Thomas agreed to approve transfer of the license to Goode, but the sale was not consummated because the licensee increased the price to $2,500. Goode filed his petition for writ of mandamus on April 2, 1974, and trial began on May 14, 1974.

At trial Mayor Thomas testified that at least two outstanding licenses were not in use—one belonging to Gray who had obtained a license during 1973-74 but had never used it, and the other belonging to Mr. Dunn who had gone out of business and who had changed the address of the licensed premises to his home. All 36 licenses, including those of Gray and Dunn, were renewed by the mayor on May 1, 1974, while Goode's application was pending, although the mayor knew that the Gray and Dunn licenses were not in use.

The trial court, in a very helpful memorandum opinion, reviewed the liquor licensing ordinance of the City of Ottawa, and concluded that the ordinance does not contemplate or permit nonuse of a license, although it contains no provision for recall or termination of a license when the licensee goes out of business. The court held that renewal of a license not in use is not permissible since an applicant for renewal must have the same requisites and qualifications as an original applicant. Renewal of licenses not in use, in the face of Goode's application and admitted qualifications and after Goode undertook to repair and remodel the tavern in reliance on the mayor's promise of a license, was held to be arbitrary and unreasonable official conduct. The court also took into account the attempts to sell licenses in contravention of section 1 of article VI of "An Act relating to alcoholic liquors" (Ill. Rev. Stat., ch. 43, § 119). Although the testimony was contradictory, the court found that the mayor had no knowledge of the proposed "sales" of licenses. The court then construed the ordinance to mean that 36 "establishments" could be licensed and held that issuance of a license to Goode would not result in more than the desired number of liquor establishments in Ottawa. The court urged the city council to adopt an ordinance banning transfers and requiring surrender or termination upon nonuse in order to aid the mayor in performing his duties as liquor commissioner.

On appeal, Mayor Thomas and the city contend that three reversible

errors were committed by the trial court: (1) refusal to dismiss the complaint for failure to allege that a license was available; (2) admission of irrelevant testimony as to use and nonuse of outstanding licenses when the question of the validity of such licenses was not before the court; (3) entry of judgment for Goode which was error as a matter of law.

These three contentions may be reduced to a single question: Under the liquor control legislation of the State of Illinois and the City of Ottawa, may the liquor commissioner, in exercise of his discretionary authority, deny an application for a license on the grounds that no licenses are available for the qualified applicant at a time when outstanding licenses are not in use? If we agree with the trial court that the denial of Goode's license was improper, plaintiff argues that we still face the problem of ordering the mayor to issue license to Goode when all 36 licenses authorized by ordinance have already been issued and none of those outstanding are before the court in this case.

■■ We can find no cases in Illinois which have considered the legal import of nonuse of liquor licenses, and neither "An Act relating to alcoholic liquors" (Ill. Rev. Stat., ch. 43), nor the Ottawa liquor ordinance (Ottawa Mun. Code, ch. 34) contains any provision for terminating a license not in use. Regulation of the liquor business must be pursuant to a legitimate exercise of State and municipal police power and, although a liquor license is a privilege, not a right, a person entitled to sell liquor is entitled to fair treatment when public officers, grant, deny, suspend or revoke liquor licenses. (*Shoot v. Illinois Liquor Control Com.*, 30 Ill.2d 570, 198 N.E.2d 497 (1964).) Good cause must be shown for denial of a license, and, where the evidence establishes that an officer arbitrarily abused his discretion in failing to issue a license, mandamus will issue compelling him to grant the license. *Stevens v. County of Lake*, 24 Ill. App.3d 51, 320 N.E.2d 263 (2d Dist. 1974); *McCray v. Daley*, 133 Ill. App.2d 67, 272 N.E.2d 815 (1st Dist. 1971); *Daley v. License Appeal Com.*, 63 Ill.App.2d 43, 211 N.E.2d 573 (1st Dist. 1965).

In our opinion, both the State statute and the Ottawa ordinance indicate a legislative intent that liquor licenses be issued to specific premises for purposes of operating a business. The grant of powers to the mayor is contained in section 3 of article IV (Ill. Rev. Stat., ch. 43, § 112), which provides, in part, as follows:

"Each local liquor control commission shall also have the following powers, functions and duties with respect to licenses * * *.

1. To grant and or suspend for not more than thirty days or revoke for cause all local licenses issued to persons for premises within his jurisdiction;

2. To enter or to authorize any law enforcing officer to enter at

any time upon any premises licensed hereunder to determine whether [any statutes or regulations] * * * are being violated * * *;

3. To receive complaint from any citizen within his jurisdiction that any of the provisions of this Act, or any rules or regulations adopted pursuant hereto, have been or are being violated and to act upon such complaints in the manner hereinafter provided * * *."

The Ottawa liquor ordinance, section 34.07, provides that a liquor license "shall permit the sale of alcoholic liquor only in the premises described in the application and license. Such location may be changed only upon the written permit to make such change issued by the mayor." Section 34.06(6) of the ordinance requires that the application state "The location and description of the premises or place of business which is to be operated under such license." Finally, section 34.10(15) provides that no license shall be issued to "A person who is not a beneficial owner of *the business to be operated* by the licensee." (Emphasis added.)

The attorney general has ruled that neither the State nor a local liquor commission can issue a retail liquor license to an applicant who has no established place of business. (1947 Att'y Gen. Rep. 76.) This conclusion was reached by an analysis of all provisions of "An Act relating to alcoholic liquors" which refer to the premises sought to be licensed. (See Ill. Rev. Stat. ch. 43, §§ 109, 112(1), 115(d), 119, 120(13), 121, 126, 156, 157.) These statutory provisions remain substantially unchanged, and we agree that the legislature contemplated that having an established place of business was a prerequisite to the issuance of a liquor license. To construe the statute and ordinance to the contrary would encourage the trafficking in licenses in violation of section 1 of article VI (Ill. Rev. Stat., ch. 43, § 119), which provides that "A license shall be purely a personal privilege; good for not to exceed one year after issuance * * *, and shall not constitute property * * *, nor shall it be alienable or transferable * * *." (*Hoyt v. McLaughlin*, 250 Ill. 442, 95 N.E. 464 (1911); 1948 Att'y Gen. Rep. 142.) The same section also provides that the renewal privilege "shall not be construed as a vested right." *Pence v. Village of Rantoul*, 12 Ill.App.3d 446, 298 N.E.2d 775 (4th Dist. 1973); *Nechi v. Daley*, 40 Ill.App.2d 326, 188 N.E.2d 243 (1st Dist. 1963).

Thus, under the facts testified to by Goode and by Mayor Thomas, the licenses reissued to Gray and Dunn on May 1, 1974, were improperly issued and could have been attacked directly by complaint under section 3 of article IV (Ill. Rev. Stat., ch. 43, § 112 (quoted above)). Petitioner Goode has elected, however, to attack the improper renewals indirectly, contending that Mayor Thomas abused his discretion in refusing to issue

a license to him solely because none were available. The mayor contends, on the other hand, that he had no discretion to exercise with respect to Goode's application because all 36 licenses permitted by ordinance are already issued. This argument begs the question. All 36 licenses expired on April 30, 1974, and thus any number of licenses became "available" for issuance to Goode. Since the mayor has admitted that Goode is a qualified applicant, and has further admitted that, at the time he renewed their licenses, Gray and Dunn were not in business, we believe it evident that at least two licenses were available for issuance to Goode on May 1, 1974. Mayor Thomas apparently failed to recognize his authority to deny an application for renewal of a license where the applicant was not the owner of a business to be operated on the licensed premises.

■■ Equitable principles may be applied to ascertain whether Goode has shown a clear right to issuance of a liquor license, sufficient to justify issuance of a writ of mandamus to compel Mayor Thomas to exercise his discretion to issue Goode the license. (*People ex rel. Shell Oil Co. v. City of Chicago*, 9 Ill.App.3d 242, 292 N.E.2d 84 (1st Dist. 1972); *People ex rel. Harty v. Gulley*, 2 Ill.App.2d 321, 119 N.E.2d 540 (4th Dist. 1954).) We conclude that Goode has established his right to a license. Whether or not issuance of a license to Goode will be an action in violation of the limitation set forth in the ordinance is a matter to be resolved by Mayor Thomas. Although we are aware of the absence of any ordinance provision requiring surrender or termination of a license when a licensee ceases to operate his business before the expiration date of his license, revocation of such a license on grounds of nonuse is nevertheless within the authority of the mayor. This is particularly true here since Gray and Dunn were not legally entitled to their current licenses when they applied for renewals. Thus the mayor is empowered to bring his licensing actions into compliance with the ordinance.

For the reasons stated, the judgement of the circuit court is affirmed.

Affirmed.

STOUDER, P. J., and ALLOY, J., concur.