RICHARD C. JAGER, d/b/a Jake's Dead End Lounge, Plaintiff-Appellant, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 77-774, 77-1062, 77-1770 cons.

Opinion filed June 20, 1979.

McGuire, Bishop and Kelly, of Crystal Lake, for appellant.

Narusis & Narusis, of McHenry, for appellee Joseph Stanek.

William J. Scott, Attorney General, of Chicago, for appellee Illinois Liquor Control Commission.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

This case involves two administrative review actions filed in the Circuit Court of Cook County by Richard C. Jager, d/b/a Jake's Dead End Lounge, against the Illinois Liquor Control Commission (State commission) and Joseph Stanek, the local liquor commissioner for the City of McHenry (local commissioner). Both suits were brought pursuant to article VII, section 8(b) of the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 154(a)) and challenged orders by the State commission affirming the local commissioner's refusal to reissue the plaintiff's liquor license. The first suit involved the plaintiff's license for the year commencing May 1, 1976. The second suit related to the license for the year commencing May 1, 1977. In both suits the circuit court affirmed the decision of the Illinois Liquor Control Commission. The plaintiff appeals in both instances and, since the evidence in both suits is identical, the appeals have been consolidated.

The record shows that the controversy involved in these suits arose in July 1975 when the chief of police of the City of McHenry filed a complaint before the local commissioner. In the complaint the plaintiff was charged with violations of the McHenry ordinances regulating the

use of the premises of liquor establishments following closing hours (McHenry Mun. Code 1961, ch. 11, art. V, §§55, 55.1) and the drinking age within the municipality (McHenry Mun. Code 1961, ch. 11, art. V, §59). In addition, it was alleged that he violated the ordinance prohibiting tumultuous conduct (McHenry Mun. Code 1961, ch. 12, art. VIII, §45(a)) or the statute on disorderly conduct (Ill. Rev. Stat. 1975, ch. 38, par. 26—1). The complaint enumerated 22 specific incidents between August 1970 and July 1975 occurring at the lounge where these violations occurred.

Subsequent to the filing of the complaint the plaintiff and the local commissioner entered into an agreement on July 23, 1975. Under the terms of this agreement the local commissioner promised that no hearing would be held on the complaint "unless this Agreement is violated." In return, the plaintiff agreed to voluntarily suspend the operation of the lounge for 21 days and that:

"* * * if a Tumultuous or Disorderly Conduct does occur in or on Jake's Dead End Lounge, [he would] call the McHenry Police Department immediately and sign a Complaint against all those persons who participate in any such conduct or any violation of any applicable laws."

The local commissioner denied the plaintiff's application for the reissuance of his license for the year commencing May 1, 1976. The plaintiff appealed this decision to the State commission and the State commission remanded the matter to the local commissioner for a hearing. On December 20, 1976, the chief of police filed a second complaint against the plaintiff. This complaint contained further allegations of violations of the disorderly conduct statute and tumultuous conduct ordinance, enumerating six additional incidents which occurred at the lounge during the period between August 1975 and March 1976. A hearing on the December 20, 1976, complaint and the complaint filed in July 1975 was held before the local commissioner.

At this hearing, the City of McHenry produced the testimony of the plaintiff and 16 other witnesses. Seven of these witnesses were patrons of the Dead End Lounge while the other nine were members of the McHenry Police Department. The testimony, in large part, related to 11 incidents, occurring during the period of January 1975 to March 1976, which had been cited in the two complaints. The witnesses testified that the following events took place at the lounge:

1. On January 4, 1975, a fight occurred during which Vaughn West was knocked unconscious. West also suffered two black eyes, required 15 stitches to close a cut in his mouth and his legs were temporarily paralyzed. The plaintiff was present at the time of the fight and later told the police that there was no problem at the bar.

2. On January 28, 1975, a police officer observed a gun being passed between two individuals inside the tavern.

3. On June 3, 1975, an altercation took place inside and outside the bar. According to the testimony of two officers, the plaintiff was present at the time.

4. On June 8, 1975, Murray Bolger testified that he received a cut from a beer glass. Bolger claimed that he fell after his brother, William, "nudged" him. However, a police officer stated that he saw William strike Murray on the head with a beer bottle which broke.

5. On June 23, 1975, a patron was struck with a pool cue during an altercation.

6. On July 11, 1975, a fight occurred outside the tavern.

7. On July 14, 1975, a police officer observed three individuals standing in front of the tavern shouting profanities and shoving each other around.

8. On December 23, 1975, an altercation occurred in front of the bar during which a police officer was struck.

9. On February 22, 1976, Irvin Gurts was injured when he was thrown to the floor during a fight at the tavern. After the tavern was closed an officer spoke with the plaintiff at which time Jager indicated that he would sign a complaint against the individuals involved in the fight only if he did not know them.

10. On February 26, 1976, John Epperson and his wife went to the lounge and, while there, several individuals began pushing Epperson around. He testified that his wife tried to call the police but the line was busy. He and his wife eventually left and they contacted the police. An officer talked with the plaintiff about the incident but he never swore out any complaints.

11. Ralph Luciano testified that a fight occurred at the lounge on the evening of March 12, 1976. As a result of the fight he lost a tooth and required stitches in his lip.

In addition, John Lent testified that he drank at the lounge for about six months before he was of legal age. However, he stated that he was never served the drinks himself, that someone else in the bar always brought them to him.

The plaintiff was questioned on these incidents but he did not recall most of them. He further stated that he usually did not call the police to his tavern to stop fights and that he never signed a complaint against anyone involved in a fight on the premises. It was also established that he pled guilty to a charge of violating a closing hour violation for the date of July 15, 1975.

The local commissioner denied the plaintiff a license and he appealed this decision to the State commission. A de novo hearing was held before Commissioners Michael Berz and Samuel Gutilla. At the hearing, the record from the local hearing was introduced into evidence by stipulation, with the exception of certain unsolicited comments from an individual in attendance. In addition, both the plaintiff and the local commissioner presented additional witnesses. Mary Louis Epperson, whose husband had been involved in the incident on February 26, 1976, testified for the local commissioner that during the altercation, the plaintiff was standing next to the telephone but did not call the police. Officer Duane Lang stated that on June 29, 1975, he observed people drinking at the lounge after legal closing hours, but he did not see anyone purchase a drink. The chief of police stated that the plaintiff's reputation in the community was poor.

The plaintiff testified that he pled guilty to one closing hour violation. Two witnesses, who were also tavern owners located in the vicinity of McHenry, testified on behalf of the plaintiff and stated that his reputation in the community was good.

At the close of the evidence the chairman of the commission requested that the arguments by the parties be submitted in writing. According to the schedule he established, the plaintiff's initial argument was to be presented within seven days. The local commissioner's response was then to be filed within three days and the plaintiff's rebuttal was to be submitted three days later. The record indicates that the plaintiff's argument was filed with the State commission on February 18, 1977, and the local commissioner's response was mailed to the commission on February 25, 1977. The plaintiff's rebuttal argument was filed on March 2, 1977.

The State commission's order, affirming the local commissioner's decision, was dated March 8, 1977, and was signed only by Gutilla. The record also indicates that Berz resigned effective March 1, 1977. In the suit the plaintiff subsequently brought for administrative review of the commission's order, the defendants filed the affidavits of Berz and Thomas Murphy, the executive director of the State commission. In these affidavits, the affiants stated that the decision affirming the action of the local commissioner was rendered by both Berz and Gutilla.

During the course of the above proceedings, the plaintiff filed an application for a license for the license year commencing May 1, 1977. The local commissioner denied this application, and the decision was subsequently affirmed on appeal by the State commission. Jager then filed a second suit in the circuit court challenging this determination. The trial court affirmed the decision of the commission.

In seeking reversal of the circuit court's order, the plaintiff raises

several issues challenging the validity of the order by the State commission affirming the denial of his 1976 license. He notes that the order was entered after the resignation of Berz as a commissioner and that the order was signed only by Gutilla. He argues that under article III, section 3 of the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 99), at least two commissioners were required to take part in the decision and that this requirement was not fulfilled. Moreover, the plaintiff asserts, if Berz participated in the decision prior to his resignation the decision is still invalid because it would have been made without the benefit of his rebuttal argument.

■■ The Berz and Murphy affidavits clearly indicate that two commissioners took part in rendering the decision, and, because there is no evidence in the record to contest the veracity of these affidavits, we must accept those assertions. Two commissioners can form a quorum. (Ill. Rev. Stat. 1975, ch. 43, pars. 97, 99.) The order of the commission is therefore not invalid for the lack of a quorum.

■■ It is also insignificant that the March 8 order was signed only by one commissioner. Article VII, section 8 of the Act (Ill. Rev. Stat. 1975, ch. 43, par. 153) provides that in certain instances the decision of the State commission, following a trial de novo, must be in writing. However, there exists no requirement that all commissioners involved in that decision must sign the order.

■■ The fact that the decision of the commission was reached prior to the time that the plaintiff's rebuttal evidence was submitted to the commission similarly does not render the decision invalid. Under section 8 of article VII of the Act (Ill. Rev. Stat. 1975, ch. 43, par. 153), the plaintiff was entitled to a de novo hearing before the commission. Although the liquor license constitutes a privilege and not a right, a person is entitled to fair treatment in the granting, denial, suspension or revocation of these licenses. (*Shoot v. Illinois Liquor Control Com.* (1964), 30 Ill. 2d 570, 198 N.E.2d 497; *Local Liquor Control Com. v. Illinois Liquor Control Com.* (1978), 59 Ill. App. 3d 1, 374 N.E.2d 1298; *Goode v. Thomas* (1975), 31 Ill. App. 3d 674, 334 N.E.2d 300.) Thus, this statutory authorization for a right to be heard provided the plaintiff with the right to such fundamental fairness as he would be entitled under due process. *Golden Egg Club, Inc., v. Illinois Liquor Control Com.* (1970), 124 Ill. App. 2d 241, 260 N.E.2d 329.

However, we do not believe that the plaintiff was deprived of such fundamental fairness in this instance. Although the decision was reached prior to the submission of his rebuttal argument, he was not completely deprived of an opportunity to present his views. His closing argument was before the commission prior to Berz' resignation. Moreover, the bulk of the evidence upon which the State commission

based its conclusion was provided by the transcript of the hearing before the local commissioner. Included in this transcript were the plaintiff's closing remarks before the local commissioner. Under these facts, we are convinced that the requisites of fairness were met.

The plaintiff next raises several issues in which he challenges the sufficiency of the evidence to support the commission's decision. He asserts that as a licensee, he was entitled to be advised of specific citations to any statutory violations and that his license could not be revoked or suspended unless it was established that he violated a regulation, statute or ordinance. He contends that the commission failed to make specific findings and argues that this omission seriously weakens the force of the commission's decision. The plaintiff argues that the good intentions of city officials to deal with municipal problems cannot be substituted for evidence of misconduct on the part of the licensee and that such wrongdoing cannot be established on the basis of conduct over which the licensee had no control. He further contends that the requirement included in the July 23, 1975, agreement that he notify the police of any altercation occurring on the premises and file complaints against any participants was unduly discriminatory since no other licensee within the municipality was under such a duty.

■■■ Under the Dramshop Act the authority to regulate the issuance of retail liquor licenses has been delegated to the local commissioners. (Ill. Rev. Stat. 1975, ch. 43, pars. 110 through 112.) The local commissioners are considered to have considerable discretion in granting or denying licenses. (*McCray v. Daley* (1971), 133 Ill. App. 2d 67, 272 N.E.2d 815; *Daley v. License Appeal Com.* (1956), 11 Ill. App. 2d 421, 138 N.E.2d 73.) However, good cause is necessary in order to deny the issuance of a license. (*Local Liquor Control Com. v. Illinois Liquor Control Com.*; *McCray v. Daley.*) Contrary to the plaintiff's assertions, he was specifically informed of statutory violations which served as the basis for the denial of his license. As a reviewing court, our task is to determine whether the State commission's conclusion that the evidence sufficiently established these violations and that such violations constituted good cause for the denial of his license is contrary to the manifest weight of the evidence. *Local Liquor Control Com. v. Illinois Liquor Control Com.*; *Wood v. Illinois Liquor Control Com.* (1977), 55 Ill. App. 3d 228, 371 N.E.2d 138.

With respect to the alleged violations of section 26—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 26—1) the statute provides, in pertinent part, as follows:

> "(a) A person commits disorderly conduct when he knowingly:
> (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace
> ⚹ ⚹ ⚹ ."

While there is evidence to support the conclusion that the plaintiff was present on several occasions when the altercations took place in the lounge, there is no evidence to show that either he nor any of his employees took part in these disturbances. The plaintiff cannot be held responsible for conduct over which he had no control. *Beer & Brat, Inc., v. Illinois Liquor Control Com.* (1976), 44 Ill. App. 3d 713, 358 N.E.2d 736; *Childers v. Illinois Liquor Control Com.* (1966), 67 Ill. App. 2d 107, 213 N.E.2d 595.

The record, however, does support the finding that the plaintiff violated the ordinances regulating closing hours and tumultuous conduct. Under chapter 11, article V, section 55.1 of the McHenry Municipal Code, all customers must be off the premises where alcoholic beverages are sold within 15 minutes of the legal closing hour. Besides the July 15, 1975, conviction for violation of this provision, Officer Lang's testimony established a second violation which occurred on June 29, 1975.

■■ Tumultuous conduct is prohibited by chapter 12, article VIII, section 45 of the McHenry Municipal Code, which reads as follows:

> "45 Prohibition. No person [*sic*] the City shall:
>> a. Tumultuous Conduct. Disturb, tend to disturb, or aid in disturbing the peace of others by violent, tumultuous, offensive or obstreperous conduct, and no person shall knowingly permit such conduct upon any premises owned or possessed by him or under his control."

The record is uncontroverted that between January 1975 and March 1976 a number of altercations took place at the bar and that as a result a number of individuals were seriously injured. On at least three occasions the plaintiff was present. Yet, despite his knowledge that fights were consistently taking place at the bar, he rejected any attempt by authorities to control the disturbances and he did not call the police nor did he sign any complaints. While the commission made no express findings, these facts are clearly manifested in the record. Such conduct, we believe, contravenes the ordinance in that it constituted knowing permission for tumultuous conduct to occur upon the premises.

■■■ These ordinance violations, we believe, provide sufficient support for the denial of the plaintiff's license. Unlike the factual situations presented in *Childers* and *Beer & Brat*, the record here shows misconduct chargeable to the licensee. Moreover, insofar as the tumultuous conduct ordinance imposes upon any retail liquor licensee in the community the obligation to aid authorities to quell a continuing series of disturbances in their establishment, the plaintiff was not the victim of unjust discrimination, as a result of his signing the agreement of July 23, 1975. We, therefore, hold that the State commission's decision is not contrary to the manifest weight of the evidence.

■■ The plaintiff next raises two arguments which relate to the conduct of the hearing before the local commissioner. In particular he challenges the impartiality of the local commissioner in his role as hearing officer. In addition, the plaintiff contends that the procedures which are applicable in actions for the revocation of a license should have been applied in the hearing before the local commissioner. The record is clear, however, that the plaintiff was afforded a trial de novo before the State commission. Such a hearing constituted an entirely new adversary proceeding in which all factual determinations were made independent of the conclusions of the local commissioner. (*Bowler's, Inc. v. Illinois Liquor Control Com.* (1968), 97 Ill. App. 2d 403, 240 N.E.2d 369; *Carnaghi v. Illinois Liquor Control Com.* (1967), 79 Ill. App. 2d 93, 223 N.E.2d 280.) Therefore, the conduct of the hearing at the local level is not at issue here.

■■ ■ The plaintiff further asserts that since many of the charges included in the two complaints related to events occurring during the period 1970 through 1975, the doctrine of laches acts to prevent the commission's reliance upon those charges. As we previously noted, evidence was introduced solely with respect to those charges occurring in 1975 and 1976 and that in our review of the propriety of the commission's action we considered only those charges. As to the incidents occurring in 1975 and 1976, we fail to find that laches bars their consideration. Laches is defined as "such neglect or omission to assert a right, taken in conjunction with the lapse of time of more or less duration, and other circumstances causing prejudice to the adverse party, as will operate as a bar in a court of equity." (*Monroe v. Civil Service Com.* (1965), 55 Ill. App. 2d 354, 357, 204 N.E.2d 486; see also *People ex rel. Jaworski v. Jenkins* (1978), 56 Ill. App. 3d 1028, 372 N.E.2d 881.) Thus, to invoke the doctrine, it is necessary to establish prejudice. (*Lincoln-Way Community High School District 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 367 N.E.2d 318.) Delay which adversely affects the ability of the trier of fact from determining the truth of the matters at issue will support the invocation of laches. (*Monroe v. Commission*; see also *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 288 N.E.2d 49.) However, because the evidence in the present case is uncontroverted, the plaintiff can claim no such detriment here. Neither before the local commissioner nor before the State commission did the plaintiff ever challenge the fact that the incidents at the bar ever occurred and, on several occasions, even stated on the record that he would stipulate to the fact that they did occur. He was, thus, apparently unconcerned with the ability of the witnesses to recall details of the events. We, therefore, feel that the plaintiff has failed to establish the requisite prejudice to invoke the doctrine of laches.

■■ Finally, the plaintiff argues that the sanctions imposed pursuant to the July 23, 1975, agreement render the charges contained in the first

complaint res judicata. It is, of course, well established that the doctrine of res judicata does not generally apply to determinations made by administrative bodies. (*Daley v. License Appeal Com.* (1965), 55 Ill. App. 2d 474, 205 N.E.2d 269.) However, in *Childers v. Illinois Liquor Control Com.* the court applied an estoppel doctrine to prevent the State commission from using two prior convictions for ordinance violations for which disciplinary action had been administered, to justify a subsequent revocation of the plaintiff's license. The court stated that "[a] proceeding, once concluded, should preclude the assessment of further penalties in the absence of proof of additional misconduct." (*Childers*, 67 Ill. App. 2d 107, 114.) That situation is distinguishable from the present case. In *Childers* the local commissioner held a hearing following the convictions and imposed a three-day suspension upon the licensee. In the instant case, the plaintiff voluntarily agreed to suspend operations for 21 days pursuant to an agreement whereby the local commissioner promised that no hearing would be held on the revocation or suspension of the license unless the agreement was violated by the plaintiff. The McHenry commissioner made no determination on the charges contained in the first complaint at the time the agreement was signed. Therefore, we conclude that the matters raised by that complaint are not res judicata.

Having considered all of the arguments raised by the plaintiff and having failed to find reversible error, we affirm the judgment of the Circuit Court of Cook County.

Affirmed.

McNAMARA and JIGANTI, JJ., concur.