EDWARD ANDERSON, d/b/a A & M Lounge, Plaintiff-Appellant, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 81-606

Opinion filed April 16, 1982.

Murphy & Preston, of Chicago (Lee Preston and James P. Flannery, Jr., of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

The Illinois Liquor Control Commission upheld a local liquor commissioner's revocation of plaintiff's liquor license. On administrative review the circuit court affirmed and plaintiff appeals contending that: (1) the Local Liquor Control Commissioner improperly revoked his license due to noncompliance with the notice and hearing requirements of section 5 of article VII of the Liquor Control Act (Ill. Rev. Stat. 1979, ch. 43, par. 149); (2) the commissioner committed abuses warranting reversal; and (3) he was not liable for wrongful acts of an alleged employee, nor was he liable for acts occurring outside the licensed premises.

Plaintiff Anderson owns and operates a tavern, the A & M Lounge, in Waukegan, Illinois. On September 27, 1980, Bill Morris, the Mayor and Local Liquor Control Commissioner of Waukegan, caused plaintiff to be served with a "Notice to Close" ordering the immediate closure of plaintiff's tavern. The notice stated that there existed sufficient information to believe that the continued operation of the licensed premises constituted an immediate threat to the welfare of the community and was predicated upon charges that certain agents or employees of plaintiff had participated in the sale of controlled substances with plaintiff's knowledge, in or about the licensed premises. The notice indicated that plaintiff would receive notice of a hearing to be held within seven days. Plaintiff closed his tavern on that date.

On October 1, 1980, at 10:51 p.m., plaintiff was served with a "Notice of Charges and Hearing" advising him that the hearing would be held on October 3, 1980, at 2 p.m. and enumerating several charges placed against him: that in September 1980 on three separate occasions Officer Herbert Milton purchased a substance represented to be heroin from Carl Banks in or around the premises; that in September 1980 plaintiff told Officer Milton that if he wanted to buy heroin he would have to wait until Carl

Banks arrived; that Carl Banks was the employee or agent of plaintiff and had free access and use of the premises for the purpose of selling such substance; and that the above sale of substances represented to be heroin were conducted with the knowledge of plaintiff, and constituted a breach of the peace and a menace to the health, safety and welfare of the public, in violation of sections 24—11—3 and 4—27(a) of the City of Waukegan ordinances. Waukegan, Ill., Code §§24—11—3 and 4—27(a) (1960).

On October 3, 1980, plaintiff's attorney and the city attorney entered into an agreement whereby the latter would agree to continue the hearing date until October 16, 1980. In return, plaintiff agreed to keep his premises closed until such hearing date. The local commissioner granted the continuance and a hearing was held on October 16, 1980.

At this hearing the City of Waukegan produced the testimony of Officer Herbert Milton, a Chicago police officer then assigned to the Federal Drug Enforcement Administration. His testimony largely related to several incidents, occurring during September 1980, which had been cited in the notice of charges. The witness testified that the following incidents took place in or about the A & M Lounge:

(1) On September 4, 1980, while working under cover, he purchased four $25 bags of a substance represented by Carl Banks to be heroin outside the lounge.

(2) On September 8, 1980, at about 11 a.m. he had the following conversation with the plaintiff outside of the lounge:

" 'I'd like to purchase four of those things I got from you yesterday.' Mr. Anderson stopped, and he said, 'What things? What are you talking about?' I said, 'Four $25 bags.' He said '$25 bags of what?' I say [sic] 'Four $25 bags of heroin.' Mr. Anderson said, 'You want to see Carl.' I said 'Carl is not here.' He said, 'So, you have to wait for him.' "

(3) On September 10, 1980, he arranged with Carl Banks a purchase of a substance represented by Banks to be heroin while inside the lounge. The delivery of the substance occurred outside of the lounge. On the same date, while sitting at the bar, he and Banks discussed the sale of weapons. Banks indicated that a display could be set up from which the officer could choose from any number of shotguns and handguns.

(4) On September 16, 1980, he arranged a purchase of heroin from Banks while in the lounge.

(5) On September 17, 1980, Banks delivered to the officer a substance represented to be heroin in the lounge.

Officer Milton further testified that he saw Banks behind the bar working on a cooler on at least four occasions. However, he stated that anybody could walk behind the bar and that plaintiff had never offered to sell him anything.

In addition, Lieutenant Lawrence Pasquini of the Waukegan Police

Department testified that when he arrested Banks on September 27, 1980, Banks possessed a key to the A & M Lounge.

Plaintiff testified that he did not give a key to the lounge to Banks and that he had no knowledge that Banks was selling substances purported to be heroin in the lounge. He further stated that Banks did not work for him except when he helped install a cooler.

The local commissioner issued an order on October 17, 1980, revoking the plaintiff's retail liquor license. The commissioner found that Carl Banks made various sales of substances represented to be heroin in and around the lounge to the undercover officer, and that plaintiff condoned his activities. The local commissioner also found that Banks had sufficient connection with and control of the premises to be considered an agent of the plaintiff. On November 7, 1980, plaintiff appealed to the Illinois Liquor Control Commission, and on November 12, 1980, the Commission directed the local commissioner to allow plaintiff to reopen pending appeal. After a hearing on January 7, 1981, the Commission issued its findings of fact and conclusions of law, affirming the order of the local commissioner on January 27, 1981. On administrative review, the circuit court affirmed the revocation of plaintiff's liquor license on March 5, 1981.

OPINION

Plaintiff first contends that the local commissioner lacked jurisdiction over the matter since he failed to comply with the three-day written notice requirement of the Illinois Liquor Control Act. (Ill. Rev. Stat. 1979, ch. 43, par. 149.) Section 5 of article VII of this Act provides in pertinent part that:

> "The local liquor control commissioner may revoke or suspend any license issued by him * * *. However, no such license shall be so revoked or suspended except after a public hearing by the local liquor control commissioner with a 3 day written notice to the licensee affording the licensee an opportunity to appear and defend." Ill. Rev. Stat. 1979, ch. 43, par. 149.

■■ Initially, we do not agree that the three-day notice requirement is correctly characterized as a jurisdictional matter. The meaning of "jurisdiction" is limited in scope and applies only to the authority to hear and decide a case. (See *One Way Liquors, Inc. v. Byrne* (1982), 105 Ill. App. 3d 856, 435 N.E.2d 144.) The issue raised is rather one of procedural due process, and thus the inquiry is whether the procedures utilized in the instant case satisfied the statutory requirements of proper notice and hearing with an opportunity to appear and defend prior to the revocation of plaintiff's liquor license.

■■ From the record there is no showing that plaintiff was not afforded an

opportunity to appear and defend at a public hearing. Plaintiff was represented by counsel at each stage of the proceedings. Although the instant notice was served upon plaintiff less than three days before the October 3, 1980, hearing date, only plaintiff's request for a continuance was considered at this hearing, and no hearing was had with respect to revocation of plaintiff's liquor license until October 16, 1980. Plaintiff raised no objection to the notice period before the local commissioner, and upon his request for an extension of the hearing period, he was afforded a total of 15 days to prepare his defense. We find that under these procedures plaintiff was not denied due process of law and that the local commissioner was not without authority to proceed in this matter.

■■ Plaintiff next contends that the notice of hearing was not pleaded with the specificity required to satisfy due process. In Illinois a retail liquor license may be revoked if it is determined that the licensee has violated any of the provisions of the Dramshop Act, any valid local ordinance, or any applicable rule or regulation of the State Commission. (Ill. Rev. Stat. 1979, ch. 43, par. 149.) The due process requirements of a definite charge and adequate notice are satisfied when the licensee is fairly and reasonably apprised of the acts of misconduct with which he is charged so that he may properly prepare to defend such charges. (See *Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 415 N.E.2d 1249.) However, it has been held that where violation of a statute could result in the loss of a licensee's license, he should be advised with specific citation as to what particular statute, ordinance, or commission rule he was charged with having violated. See *Beer & Brat, Inc. v. Illinois Liquor Control Com.* (1976), 44 Ill. App. 3d 713, 358 N.E.2d 736; *Daley v. Resnick* (1972), 5 Ill. App. 3d 683, 284 N.E.2d 39.

■■ The instant charges contained detailed factual allegations indicating acts of alleged misconduct occurring at plaintiff's place of business as well as specific citations to the State statutes and local ordinances plaintiff was charged with having violated. Further, the charges included the dates of the alleged misconduct and referred to the names of witnesses supporting the charges. This is not a situation where plaintiff did not have an opportunity to prepare his defense. Moreover, we do not agree that the complaint merely charged plaintiff with creating a breach of the peace and with not being of good reputation and character. The charges cited section 24—11—3 of the City of Waukegan Code, which specifically provides for revocation or suspension of a license when the licensed activity is conducted "in such a manner as to constitute a breach of the peace, *or* a menace to the health, safety or welfare of the public, * * *." (Emphasis added.) (Waukegan, Ill., Code §24—11—3 (1960).) We find that the complaint herein satisfies the requirements of due process.

■■ Plaintiff next asserts that the seven-day closing of his place of business

by the local commissioner was abusive to the point of warranting reversal. Article VII, section 5 of the Liquor Control Act gives a local commissioner the power to close a licensed premises without a prior hearing for seven days when he "has reason to believe that any continued operation * * * will immediately threaten the welfare of the community * * *." (Ill. Rev. Stat. 1979, ch. 43, par. 149.) We reject plaintiff's unsupported argument that this type of closure would be appropriate only at a time of civil unrest or natural disorder. The illogic of this assertion is manifest in that the seven-day closure is not applicable to other businesses conducted by the licensee on the licensed premises. In any case the written order of closure here complied with the procedural requirements of section 5. From the record we cannot hold that the local commissioner, when confronted with information that the A & M Lounge was being used for the sale of substances represented to be heroin, erred in concluding that an immediate threat to the welfare of the community existed by the continued operation of the plaintiff's place of business. In light of the evidence we feel that the local commissioner did not abuse his discretion by issuing the notice to close.

■■ The plaintiff further argues that the local commissioner abused his discretion by refusing to allow him to reopen the premises after seven days. Although section 5 provides that the licensed premises may be closed for not more than seven days without notice or hearing (Ill. Rev. Stat. 1979, ch. 43, par. 149), the instant record shows that plaintiff was given an opportunity to be heard within seven days at the October 3, 1980, hearing, and that he asked for a continuance until October 16, 1980, voluntarily agreeing to remain closed until that date. In our view the extended closure period was not attributable to any alleged abuses by the local commissioner, but rather resulted from the plaintiff's voluntary agreement to remain closed until the October 16 hearing date.

Plaintiff next raises several issues in which he challenges the sufficiency of the evidence to support the commissioner's decision. He contends that Carl Banks was not his employee at the time of the alleged wrongdoing, and that even if he was an employee, the licensee is not liable for acts of an off-duty employee. He also argues that the alleged unlawful action of Carl Banks occurred outside of the licensed premises, and that the licensee cannot be held liable for such acts unless there is proof that Carl Banks was working for him at the time he committed the acts.

■■ The role of the court upon administrative review is to determine whether the findings of the commissioner are contrary to the manifest weight of the evidence (*Jager v. Illinois Liquor Control Com.* (1979), 74 Ill. App. 3d 33, 392 N.E.2d 176), and the courts cannot reweigh the evidence or make an independent determination of the facts. (*Kenessey*

*Enterprises, Inc. v. Illinois Liquor Control Com.* (1978), 63 Ill. App. 3d 975, 380 N.E.2d 996.) Although the licensee generally cannot be held liable for conduct over which he has no control (*Jager; Beer & Brat, Inc. v. Illinois Liquor Control Com.* (1976), 44 Ill. App. 3d 713, 358 N.E.2d 736), article X, section 3 of the Dramshop Act provides that acts done by any agent or employee constituting a violation of the Act are deemed to be the acts of the employer or licensee as if said acts had been done by him personally. (Ill. Rev. Stat. 1979, ch. 43, par. 185.) The commissioner concluded that Carl Banks had sufficient connection and control of the premises to be considered an agent of the licensee. The evidence revealed that Banks was seen behind the bar on four occasions by Officer Milton, and that when arrested he possessed a key to the premises. Additionally, it was adduced that plaintiff told Officer Milton that he would have to wait for Banks to arrive in response to Officer Milton's inquiry regarding the purchase of heroin. The evidence shows that the commissioner's orders and finding were not against the manifest weight of the evidence.

Plaintiff argues that he is not liable for acts occurring outside the licensed premises. The evidence adduced at the hearing showed that the September 17, 1980, delivery of heroin occurred inside the lounge. From the record we cannot say that the plaintiff was charged with conduct over which he had no control. Based on the September 8, 1980, conversation between plaintiff and Officer Milton, the commissioner could reasonably conclude that plaintiff was aware of and permitted the activities of Carl Banks. We find that the decision of the local commissioner is supported by substantial evidence and is neither arbitrary nor contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court upholding the Commission's decision is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.