William M. Hoyt, Appellant, *vs.* Robert G. McLaugh-
lin *et al.* Appellees.

*Opinion filed June 20, 1911.*

1. Nuisances—*when public nuisance cannot be abated at suit
of private individual.* A public nuisance cannot be abated at the
suit of a private person but only in an action by or in the name
of the People, unless the nuisance causes such person a special and
particular injury distinct from that suffered by him in common
with the public at large.

2. Same—*what is meant by injury to the public.* Injury to the
public, as that term is used with reference to the abating of nui-
sances, means such an injury as hinders or excludes all persons
alike from the enjoyment of a common right; but the question
whether a person has suffered special injury different from the
public injury is not determined by whether he alone has suffered
injury or whether others in the vicinity have also been injured.

3. Same—*what does not affect right of person to maintain bill
to abate nuisance.* If an individual has suffered special damage
to his property from a public nuisance his right to maintain a bill
to enjoin its continuance is not affected by the mere fact that the
property of others in the vicinity is injured from the same cause.

4. Same—*what allegations show special damage from conduct-
ing unlicensed dram-shop.* A bill seeking to enjoin the conducting
of an unlicensed dram-shop (which the statute declares to be a
public nuisance) makes a case of special injury which alleges that
the rental value of complainant's building, which is used for stores
and flats, is greatly depreciated by the dram-shop being conducted
in the same block, and that complainant is thereby compelled to
rent to a class of tenants containing a greater per cent of persons
who fail to pay rent than the class he could get if the dram-shop
were not conducted there.

5. Dram-shops—*when license to keep a dram-shop is invalid.*
A dram-shop license is invalid which is issued without complying
with the terms of an ordinance requiring the application to be
signed by a specified proportion of the property owners within the
territory fixed by the ordinance.

6. Same—*property owners on both streets must sign petition
where dram-shop has a corner entrance.* Where the main entrance
of a dram-shop located on a corner lot is diagonally across the
corner of the building, so that it is as much on one street as the
other, the signatures of property owners on both streets must be

obtained under an ordinance requiring the signatures of a specified portion of the property owners on each side of the street in the block where the dram-shop has its main entrance.

7. SAME—*one person cannot operate dram-shop under another person's license.* Neither under paragraph 4 of the Dram-shop act nor section 1332 of the ordinances of the city of Chicago is it lawful for one person to own, maintain and conduct a dram-shop under a license issued to and in the name of another person.

8. SAME—*the Chicago ordinance dividing license year into two periods is not unlawful.* Section 1340 of the Chicago ordinances, which divides the license year into two periods of six months each and permits licenses to be issued for each period for $500 license fee in advance, but which authorizes the issuing of a license for the full year for $1000 in advance, with provisions for issuing licenses for unexpired portions of the year or periods, is not in conflict with paragraph 3 of the Dram-shop statute.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM FENIMORE COOPER, Judge, presiding.

EDWIN BEBB, for appellant.

WINSTON, PAYNE, STRAWN & SHAW, (ARTHUR C. MARRIOTT, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The appellant, William M. Hoyt, filed a bill in the superior court of Cook county, on the chancery side, for an injunction against Herman P. Grube and Robert G. McLaughlin, the appellees, the latter of whom was running a dram-shop located on the corner of Fifty-fifth street and Lake avenue, in the city of Chicago. The bill alleged that the dram-shop was owned and conducted by McLaughlin under a license issued to Grube; that the ordinance under which said license was issued was void; that the petition filed with the application for license did not contain a sufficient number of signers, as required by the ordinance, and that said dram-shop was operated and maintained by said McLaughlin illegally and without any warrant of law. The

bill further alleged that appellant is the owner and in pos-
session of a four-story brick building located at 5528 and
5530 Lake avenue, which building contains on the first
floor two store rooms leased and occupied for merchandise
purposes, and on the second, third and fourth floors are
eighteen flats or apartments occupied as dwellings by ten-
ants, for which a certain rent is paid to appellant. The
bill further alleged that appellant's property is located in
the same block as the dram-shop and about two hundred
feet distant therefrom; that the operation of said dram-
shop denies "to the complainant and his said tenants the
peace and quiet to which they are entitled, and said saloon,
and its patrons attracted thereto, are a constant source of
injury and damage to the said property of complainant used
for dwellings and for other purposes, as aforesaid, and de-
preciate the value of complainant's said property; that by
reason of the nuisance of the said saloon and by reason of
the inherent nature of the business said complainant cannot
rent his said apartments or flats as dwellings and stores ad-
vantageously, and is forced to rent the said dwellings at a
greatly reduced rent from that which he otherwise could
have obtained, to the great loss of the complainant; that
the class of tenants who will rent such dwellings and stores
while said unlawful saloon or dram-shop is operated em-
brace a larger number than there otherwise would be of
persons who are unable to pay their rent when due and
often fail wholly to pay their rent, to the great loss of
complainant." The bill alleged that the damage and injury
to appellant occasioned by maintaining and operating said
dram-shop were great and irreparable, and that appellant
would continue to suffer such damage and injury unless ap-
pellees be enjoined from further operating, conducting and
maintaining said dram-shop. A general demurrer was filed
to the bill, which was sustained by the court and the bill
dismissed for want of equity. The court having certified
that the validity of a municipal ordinance of the city of

Chicago was involved and that the public interest required that the question should be passed upon by this court, an appeal was prayed and allowed and the case has been brought here for review.

The bill alleges that the property described is in what was the village of Hyde Park before its annexation to the city of Chicago; that prior to said annexation the village adopted an ordinance which, in part, is as follows: "Any person who shall desire to obtain a license to keep a saloon or dram-shop shall, in addition to the requirements now provided by ordinance, present his application, in writing, to the village comptroller for such license, in which shall be stated the name of the person or firm to whom the license is to be issued and the place where such saloon or dram-shop is to be kept, which application shall be signed by a majority of the property owners, according to frontage, on both sides of the street in the block in which such dram-shop is to be kept, and shall also be signed by a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block upon which such dram-shop shall have its main entrance," and which said ordinance is now in full force and effect in that part of the city of Chicago which was formerly Hyde Park. The bill alleges that said ordinance was not complied with by securing the signatures to the application for license of a majority of the property owners, according to frontage, on both sides of the street in the block in which the dram-shop is located, nor by securing to the application the signatures of a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block upon which the dram-shop has its main entrance. It is alleged that at the time the license was issued the total number of *bona fide* householders, persons or firms living or doing business on the east side of Lake avenue in the block in which the dram-shop is located was nine, but that only two of this number had

signed the application. The entrance to the dram-shop is in the corner of the building on Lake avenue and Fifty-fifth street, and is alleged to be as much on one street as the other. The bill charges it was the duty of the applicant for license to secure the signatures of a majority of the *bona fide* householders and persons or firms living in or doing business on each side of both Lake avenue and Fifty-fifth street because the main entrance was on both of said streets, and it is alleged the application was not signed by any householder, person or firm living or doing business on either side of Fifty-fifth street. The bill sets out a number of ordinances of the city of Chicago relating to the subject of dram-shops, among them section 1340, which divides the license year into two periods of six months each, and authorizes a license for either period upon the payment of the fee in advance for the period. This ordinance, it is alleged, is in conflict with the Dram-shop act and is invalid.

While the trial court certified that the validity of an ordinance of the city of Chicago is involved and the public interest required the appeal to be prosecuted to this court, we have not been favored by counsel for appellees with any reference to or discussion of the validity of any ordinance. The grounds relied upon by appellees to sustain the decree of the superior court are, that the bill does not make a case showing special damage to appellant different from that suffered by the public at large, and in the absence of such showing it is claimed the nuisance could only be abated in an action by or in the name of the People. It is also insisted that the validity of a city ordinance cannot be raised in a court of equity by bill for an injunction.

An unlicensed dram-shop or saloon is declared by law to be a nuisance. (Hurd's Stat. 1909, chap. 43, par. 7.) Can such a nuisance be abated at the suit of a private person? The answer to this question depends upon whether an individual has suffered special damage different from that suffered by him in common with the public. The rule

is well settled by the decisions of this and other States that a public nuisance will not be enjoined at the suit of a private person unless the nuisance causes such person a special and particular injury distinct from that suffered by him in common with the public at large. In cases where no private or special injury is caused to an individual an action to abate the nuisance must be instituted by or in the name of the public. But a public nuisance may also be a private nuisance, (Wood on Nuisances, sec. 674,) as where the property of an individual is injured in a manner special to him and different from the injury to the public. An injury to the public, in the sense here used, is such an injury as excludes or hinders all alike in the enjoyment of a common right. The question whether a private person has suffered such special injury or damage is not to be determined by whether he, alone, has suffered damage or whether others in the same vicinity have been injured also. If an individual has suffered special damage to his property from the nuisance, his right to maintain a bill to enjoin it is not affected by the fact that the property of others has been injured by the same cause. (*Wylie* v. *Elwood,* 134 Ill. 281.) This question has been the subject of frequent adjudication, and, according to the great weight of authority, if the allegations of the bill here make a case against appellees of conducting a dram-shop without a license, the special damage alleged is sufficient to authorize maintaining the bill. In *Wesson* v. *Washburn Iron Co.* 95 Mass. 95, the court said: "The real distinction would seem to be this: That when the wrongful act is, of itself, a disturbance or obstruction only to the exercise of a common and public right, the sole remedy is by public prosecution, unless special damage is caused to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong by injuring property or health or creating personal inconvenience and annoyance for which an action might be maintained in favor

of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance." Other cases in point and sustaining the appellant's right to maintain his action are: *Crawford* v. *Tyrell,* 128 N. Y. 34; 28 N. E. Rep. 514; *Weakley* v. *Page,* 102 Tenn. 178; 46 L. R. A. 552; *Kissel* v. *Lewis,* 156 Ind. 233; 59 N. E. Rep. 478; *Hamilton* v. *Whitledge,* 11 Md. 128; 69 Am. Dec. 184; *Haggard* v. *Stehlin,* 137 Ind. 43; 22 L. R. A. 577; *Detroit Realty Co.* v. *Oppenheim,* 156 Mich. 385; 21 L. R. A. (N. S.) 585; *Yolo County* v. *Sacramento,* 36 Cal. 193; *Walker* v. *Shepardson,* 2 Wis. 384; 60 Am. Dec. 423.

The ordinance prescribing the requirements of the application for a dram-shop license, with reference to the signatures of property owners, was adopted by the former village of Hyde Park, but it has continued in force in that territory since the annexation of the village of Hyde Park to the city of Chicago and has been frequently before this court. *People* v. *Harrison,* 185 Ill. 307; *Harrison* v. *People,* 195 id. 466; *People* v. *Griesbach,* 211 id. 35; *Theurer* v. *People,* 211 id. 296; *People* v. *Heidelberg Garden Co.* 233 id. 290.

The bill alleges that the application by appellee Grube for the license was not signed, as the ordinance required, by a majority of the property owners, according to frontage, on both sides of the street in the block where the dram-shop was to be kept, and was not signed by a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block upon which the dram-shop has its main entrance; that there were nine *bona fide* householders and persons or firms living in or doing business on the east side of Lake avenue,—a street in the block upon which said dram-shop had its main entrance when the pretended license was issued,—but only two of said number signed the application.

By reason of these matters the bill alleges the license issued was void. That a license issued without compliance with the ordinance requiring the application to be signed by the proportion of the property owners specified is invalid and void was held in *People* v. *Griesbach, supra, Martens* v. *People,* 186 Ill. 314, and *Theurer* v. *People, supra.* On this ground we think the allegations of the bill made a case against appellees of running a dram-shop without a license, and the demurrer admitted the truth of these allegations.

It is also alleged in the bill that the dram-shop is located on the corner of Lake avenue and Fifty-fifth street; that the main entrance is diagonally across the corner of the building and is as convenient from Fifty-fifth street as from Lake avenue,—in fact, is as much on one street as the other,—but no signatures of householders, persons or firms doing business on Fifty-fifth street were obtained, and it is claimed in such case it was required that the application be signed by the requisite number on Fifty-fifth street. We are of opinion this is a proper construction of the ordinance. It is to be assumed that there were special reasons for requiring the applicant for a license to secure the signatures to his application of a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block upon which the dram-shop was to have its main entrance. According to the allegations of the bill the main entrance was on two streets, or, at least, it was no more on Lake avenue than it was on Fifty-fifth street. Where such an entrance is adopted it is our opinion the ordinance would not be complied with by procuring signatures only of persons on Lake avenue.

The bill further alleges the license was secured by and issued to appellee Grube but that the dram-shop is now owned, maintained and operated by appellee McLaughlin; that McLaughlin is lessee of the building and has had issued to him a United States government tax receipt au-

thorizing him to sell intoxicating liquors; that the said McLaughlin purchases in his own name the liquors sold in said dram-shop and advertises himself to be the owner of said dram-shop, and that this is all done upon the pretended authority of the license issued to the appellee Grube. Paragraph 4 of the Dram-shop act provides a dram-shop license shall not be transferable. Section 1332 of the ordinances of the city of Chicago, which is made part of the bill, is as follows: "No license granted under this ordinance shall be assigned or transferred except as hereinafter provided, nor shall any such license authorize any person to do business or act under it but the person named thereon. Any person to whom any license shall have been issued may, with the permission of the mayor, assign and transfer the same to any other person, and the person to whom such license is issued, or the assignee of such license, shall surrender such assigned license and have a new license issued for the unexpired term of the old license, authorizing the assignee or transferee of such license to carry on the same business or occupation at such place as may be named in such new license: *Provided,* that in all cases the person obtaining such new license shall give a bond, with sureties, which shall conform, as near as may be, to the bond upon which such surrendered license was issued: *Provided further,* that nothing herein contained shall be held to authorize the assignment or transfer of saloon or dram-shop licenses. Such licenses shall be non-assignable and not transferable." It would seem too plain for debate that McLaughlin could not own, maintain and conduct a dram-shop under a license issued to and in the name of another man.

The validity of the ordinance relating to the signatures of property owners in the block, and householders, persons or firms living in or doing business on each side of the street where the dram-shop has its main entrance, is not questioned in this suit by either party, and we are of opinion that whether the ordinance which is attacked by ap-

pellant is valid or invalid, the allegations of the bill were sufficient to require an answer. The decree merely sustains the general demurrer of appellees to the bill and dismisses it for want of equity. The chancellor certified that the validity of an ordinance is involved and that the public interest required the appeal to be direct to this court.

The bill makes ordinance 1340 of the city of Chicago a part thereof and alleges that it is in conflict with paragraph 3 of chapter 43. (Hurd's Stat. 1909, p. 931.) Section 1340 of the ordinance divides the license year into two periods. The first period is from May 1 to October 31 and the second period from November 1 to April 30. It authorizes dram-shop licenses to be issued for the full license year or the unexpired portion thereof, or for any period of the unexpired portion thereof. The license fee of $1000 is made payable in advance for the full year, or $500 in advance for each period. If a license is issued for the unexpired portion of a year or for the unexpired portion of any period, the fee to be paid shall bear the same ratio to the sum required for the whole year that the number of days in such unexpired portion bears to the whole number of days in the year. One of the errors assigned is that the court erred in holding this ordinance valid. The bill alleges the license was issued to the appellee Grube by periods, in accordance with the provisions of said ordinance, and the fee for each period was paid in advance. Paragraph 3, which appellant claims the ordinance is in conflict with, reads: "That hereafter it shall not be lawful for the corporate authorities of any city, town or village in this State, to grant a license for the keeping of a dram-shop, except upon the payment, in advance, into the treasury of the city, town or village granting the license, such sum as may be determined by the respective authorities of such city, town or village, not less than at the rate of five hundred dollars ($500) per annum." We do not think the ordinance is in conflict with the statute, but for the reasons

given, the bill stated a cause of action and the court erred in sustaining the demurrer to and dismissing it.

The decree is reversed and the cause remanded to the superior court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*