DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEARS 1915 and 1916.

---

## United Breweries Company, Appellee, v. Joseph S. Price, Appellant.

### Gen. No. 20,885.

1. CORPORATIONS, § 448*—*when contract not ultra vires.* A contract between a brewery company and a saloon keeper for the loaning of money, the securing of a license and the sale of liquor under certain conditions, being in furtherance of the business for which the company was organized, is not *ultra vires.*

2. INTOXICATING LIQUORS, § 58*—*when contract for assignment of right of renewal of license invalid.* A contract between a brewery company and a saloon keeper for the assignment by the latter to a designated third person of the alleged "right of renewal" of a saloon license which might be issued to the saloon keeper is illegal and void, as there is no right of renewal of a saloon license.

3. INTOXICATING LIQUORS, § 58*—*right of renewal of saloon license.* There is no right of renewal of a saloon license.

4. INTOXICATING LIQUORS, § 24*—*when person may not conduct saloon.* A person cannot own and conduct a saloon under a license issued to and in the name of another.

5. INTOXICATING LIQUORS, § 52*—*when right to saloon license nonassignable.* The right to a saloon license for an unexpired part of a license year, if a municipal ordinance gives such a right, inheres in the license already issued, and cannot be disconnected therefrom, and made the subject of a separate assignment.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(289)

6. CONTRACTS, § 134*—*when contract for operation of saloon illegal.* A contract extending over a period of seven and a half years between a brewery company and a saloon keeper for the loaning of money, the sale of liquor, the loaning of the right to a saloon license for temporary use, all future rights to remain in the brewery company or a person designated by it, constitutes a contract to operate a saloon under a license owned by another, and is consequently illegal.

7. CONTRACTS, § 134*—*when contract for purchase of liquor illegal.* A contract for the purchase of liquor by a saloon keeper from a brewery company, based upon an illegal agreement for the operation of a saloon under a license not owned or controlled by the latter, is not enforceable.

8. INTOXICATING LIQUORS, § 269*—*when brewery loaning money to saloon keeper may recover loan under contract.* A brewery company which loans money to a saloon keeper to run his business under an illegal agreement to operate a saloon under a license not owned or controlled by the latter may recover the money loaned upon noncompliance by the latter with the terms of the contract.

Appeal from the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the October term, 1914. Reversed and judgment here. Opinion filed November 1, 1915. *Certiorari* denied by Supreme Court (making opinion final).

JACOB C. LEBOSKY, for appellant.

RINGER, WILHARTZ, LOUER & CONCANNON, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit upon a written contract. Defendant's affidavit of defense was stricken from the files and judgment entered against him for $7,131.65. The contract, dated October 6, 1913, is signed by plaintiff, therein called "first party," and defendant, called "second party," and is in part as follows:

"Whereas, said second party desires to conduct a saloon business at Number 156 West Van Buren

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Street, Chicago, Illinois, opening the same on November 1, 1913, and desires also to purchase five thousand (5,000) barrels of beer for the conduct of said saloon business, and desires to secure the sum of Five Thousand Dollars ($5,000.00) in cash, and also needs an assignment of the right to a saloon license for the City of Chicago, as a loan for temporary use for the specific purpose of obtaining a saloon license for the aforesaid premises for the period of six (6) months beginning November 1, 1913.

"Now, therefore, said first party, in consideration of the trade and purchases of said second party and of the prices to be paid as hereinafter provided, hereby agrees to supply to said second party, delivered upon said premises during customary business hours in the usual manner, Five Thousand (5,000) barrels of beer of good merchantable quality and of its usual grades and brands for the retail requirements of the aforesaid saloon alone.

"Said first party agrees also to furnish said second party with the sum of Five Thousand Dollars ($5,000.00) to be paid one-half upon the signing of this agreement, receipt whereof is hereby acknowledged by said second party, and the remaining one-half, to wit: Two Thousand Five Hundred Dollars ($2,500.00), upon the opening for business of aforesaid saloon by said second party.

"Said second party will repay to said first party the sum of Two Thousand Dollars ($2,000.00), in accordance with the terms of fourteen (14) promissory notes, aggregating the sum of Two Thousand Dollars ($2,000.00), of even date herewith.

"Said first party also agrees to furnish said second party with an assignment of the right to a saloon license for a period of six (6) months beginning Nov. 1, 1913, and said second party agrees and declares that the right to the assignment of a saloon license loaned and furnished, or caused to be loaned and furnished by said first party under this agreement is for temporary use, and all future rights thereunder are and shall remain the property and rights of said first party

or of such person as may be designated by the said first party.

"Said second party agrees that immediately upon issue to him by the City of Chicago of a saloon license under the right of assignment furnished as aforesaid, he will without reservation of any kind and without consideration reassign to Carl Antonsen, or such other person as said first party may designate, the right of renewal of such license and all of the rights appertaining thereto in the form satisfactory to said first party, and failing to do so said second party irrevocably appoints Albert Hahne as his attorney to make such assignment in his name, place and stead."

The defendant further agreed to maintain and operate continuously a saloon upon the premises and to purchase 5,000 barrels at the rate of not less than 50 per month. In the event of his failure to perform his covenants and agreements he was to pay plaintiff immediately the sum of $3,000 with interest at six per cent., and any unpaid portion of his said promissory notes should become immediately due and payable; but if his covenants should be performed, the plaintiff should have no claim for the repayment of the $3,000. The term of the contract was fixed at five years, but by a supplemental agreement was extended to seven and one-half years.

Plaintiff in its statement of claim alleges the payment of the $5,000 and that it received defendant's promissory notes for $2,000; that defendant has not kept his agreements in that in the month of November, 1913, he purchased only 13 barrels of beer, and during December, 1913, only 21½ barrels, and has purchased beer to be used in the above premises from persons or corporations other than the plaintiff. It claims as due the sum of $3,000 with interest; also the sum of $1,700 with interest, evidenced by 12 notes of the defendant remaining unpaid; also 50 cents per barrel upon 4,973 barrels of beer, being the remaining

number of barrels which were to be furnished by plaintiff to defendant under the terms of the contract.

Defendant's affidavit set up want of consideration, that the contract was *ultra vires,* that the notes were not yet due, and that plaintiff was a foreign corporation. The last-named defense was subsequently withdrawn. Upon the trial the notes were surrendered to the defendant.

The contract is not *ultra vires.* Its purpose was to advance and promote the objects for which the plaintiff corporation was organized. *Kraft v. West Side Brewery Co.,* 219 Ill. 205, is in point.

It is claimed that this contract is without consideration in that it unlawfully provides that defendant shall conduct a saloon for seven and one-half years under a license owned by plaintiff, to be loaned temporarily to defendant but transferred when plaintiff so indicated to another person designated by it.

The term of a saloon license is one year, no longer. It is said by counsel that the license year in Chicago is divided into two periods of six months each, the first period beginning May 1st, and the second or last period beginning November 1st. This contract seems to contemplate that plaintiff would cause some one with a license to assign it to defendant, who would thereupon take out a license for the last half of the year in his own name; but "immediately upon issue to him" he should assign to a person designated by plaintiff "the right of renewal of such license."

It is the settled law in this State that a contract for the assignment of the so-called right of renewal of a license is void; that there is no *right of renewal. People v. Harrison,* 256 Ill. 102, and *Bartkowiak v. Malinowski,* 256 Ill. 119. It follows, therefore, that the agreement that defendant should assign "the right of renewal" of any license which might be issued to him to the Carl Antonsen named in the contract, or to such other person as the plaintiff might designate,

and the power of attorney to that end, are illegal and void.

It is also the law in this State that one cannot own and conduct a saloon under a license issued to and in the name of another. *Hoyt v. McLaughlin,* 250 Ill. 442. Section 46 of article V. ch. 24, Cities and Villages Act, Ill. St. [J. & A. ¶ 1344 (46)], provides "that in granting licenses, such corporate authorities shall comply with whatever general law of the State may be in force relative to the granting of licenses." In section 4, ch. 43, of the Dramshop Act, Ill. St. (J. & A. ¶ 4603), it is provided that saloon licenses shall not be transferable, and in the opinion in *Hoyt v. McLaughlin, supra,* the court cited this section of the Dramshop Act and also a city ordinance as the basis for its holding that a person cannot operate a saloon in Chicago under a license belonging to another.

Is this a contract for defendant to operate a saloon under a license owned by some one else? We are of the opinion that it is. Plaintiff agrees to loan defendant "an assignment of the right to a saloon license * * * for temporary use, and all future rights thereunder are and shall remain the property and rights of said first party or of such person as may be designated by the said first party." There is no substantial difference between a loan of "the right to a saloon license" for the remainder of a license year, and the loan of the license itself. The right to a license for the unexpired part of a license year, if the municipal ordinance gives such a right, inheres in the license already issued in the beginning of the year and cannot be disconnected therefrom and made the subject of a separate assignment. Practically, this contract means that plaintiff should loan a license to defendant and when a new license would be issued to him he must immediately assign it to some one else, but continue buying beer from plaintiff for use in his saloon which was to be operated for seven

and one-half years apparently under no license of his own.

It is also to be noted that the provision of the contract for the reassignment of the right of renewal to Antonsen, or some other person, contains a clause that defendant shall assign to the same person "the rights appertaining" to the license issued to him, which would include the right to operate the saloon upon the premises described in the contract. In other words, defendant in the same contract has undertaken to operate the saloon for a long period of time and also to assign to another his right to operate it. The agreement of defendant to buy 5,000 barrels of beer from plaintiff is based upon the illegal agreement for the operation of a saloon under a license which he did not own or control. This contract of purchase cannot be enforced. Hence that part of the judgment which is for beer undelivered is erroneous. This amounts to $2,470.75.

We see no reason, however, why defendant is not obligated to return the money which was loaned to him. This is not a case where both parties to the contract are engaged in a wrongful act and the rule applied that where the parties are *in pari delicto* courts will not interfere. The contract is illegal in one particular, so that the operation of a saloon by defendant as contemplated cannot be carried out. Under such circumstances he is obligated to repay the money which plaintiff advanced to him for that purpose. The part of the judgment based upon the loan of $5,000 is proper.

The judgment is reversed and judgment is entered in this court for $4,660.90.

*Reversed and judgment in this court.*