J.E.L. REALTORS, INC., Plaintiff-Appellant, *v.* DANIEL F. METTILLE *et al.*, Defendants-Appellees.

Third District   No. 82—229

Opinion filed December 30, 1982.

Joseph E. Lanuti, of Lanuti, Martin & Lanuti, of Ottawa, for appellant.

Lawrence W. Baxter, of Warren, Hayner & Baxter, P.C., of Ottawa, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

The plaintiff filed suit against two of the defendants in this case, alleging an intentional interference with contractual relations. The defendants moved for summary judgment in their favor, which the trial court granted in defendants' favor.

The plaintiff owns a tavern in Ottawa, Illinois. On January 5, 1980, the plaintiff leased this building to Daniel F. Mettille, one of the defendants to this action. The lease expired on January 14, 1980. According to the terms of the lease, Mettille could only use the building as a tavern. A notation at the bottom of the lease indicates the parties extended the lease to April 30, 1980. The plaintiff and Mettille also signed an addendum to the lease. The provision of the addendum under dispute concerns the liquor license issued to Mettille:

"5. It is further understood and agreed between the parties that the Liquor License actually belongs to and is the property of J.E.L. Realtors, Inc.; however, it is further thoroughly understood for the convenience sale [sic] and for the ordering of supplies, etc., for the Tropic Lounge that the liquor license shall be issued in the name of the Lessee, it being further understood that the Lessee is responsible for payment of any normal charges for obtaining said licenses. However, the licenses shall remain always on the premises, and shall be transferred

back to the Lessor in the event the lessee were to cease to operate the Tropic Lounge at this location ***."

On April 30, 1980, the plaintiff and Mettille entered into an oral agreement to extend the lease and the addendum to April 30, 1981.

The record does not indicate when Mettille received his original liquor license. In May 1980, though, he renewed his license. On August 8, 1980, Mettille returned the liquor license to the liquor commissioner, requesting that it be reissued to Jerry Halterman and Daniel Reynolds, the other two defendants to this action. The liquor commissioner subsequently reissued the license to Halterman and Reynolds.

The plaintiff filed this suit against Mettille, Halterman and Reynolds. In the first two counts of the complaint, the plaintiff alleged a breach of contract by Mettille. In the third count, the plaintiff alleged an intentional interference with contractual relations against Halterman and Reynolds. These defendants moved for summary judgment, arguing that the contract was void as against public policy. They argued that a liquor license is not a property right and that it is a personal privilege. As such, it is argued, the plaintiff can have no interest in it. Therefore, the defendants contended, the contractual provision is void and unenforceable. The trial court granted the defendant's motion for summary judgment. The plaintiff now appeals.

■ The elements of intentional interference with contractual relations include: (1) the existence of a valid and enforceable contract between the plaintiff and a third-party; (2) the defendant's awareness of the contract; (3) the defendants intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third-party, caused by the defendant's conduct, and (5) damage to the plaintiff. (*Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551, 413 N.E.2d 98.) In its motion for summary judgment and in its argument to this court, the defendants argued that every element of the plaintiff's action must fail. The primary focus of the arguments, however, has been upon the first element: Is the contract valid? Specifically, the issue is whether paragraph five of the addendum is void as against public policy.

The Liquor Control Act clearly states that a liquor license is a personal privilege, not a property right:

"A license shall be purely a personal privilege, good for not to exceed one year after issuance, except a non-beverage user's license, unless sooner revoked as in this Act provided, and shall not constitute property, nor shall it be subject to attachment, garnishment or execution, nor shall it be alienable or transferable, voluntarily or involuntarily, or subject to being encum-

bered or hypothecated." (Ill. Rev. Stat. 1981, ch. 43, par. 119.) Courts have consistently recognized and enforced this policy. See, *e.g.*, *United Breweries Co. v. Price* (1915), 197 Ill. App. 289; *Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 269 N.E.2d 340.

The city of Ottawa Liquor Control Ordinance, however, permits a "transfer" of a liquor license, in spite of the apparent prohibition as to transfers under the Liquor Control Act:

> "A license may be transferred by a licensee to another party but only if the transferree files a proper application and bond and meets all the requirements for a license as herein set forth. All requests for transfer must be in writing and be approved by the Mayor. The fee for such transfer shall be $50 and shall accompany the request for transfer." (Ottawa, Ill., Municipal Code, ch. 34, par. 34.07 (1979).)

A liquor license is not actually sold in the same sense that an item of personal property or a piece of real estate is sold. A licensee can surrender his license to the liquor commissioner with a request that it be reissued to another party. The "transferree" must file an application for a license and meet all State and municipal requirements for the license. As the Ottawa Municipal Code indicates, the Commissioner is free to disapprove the "transfer." He is not bound by the agreement between the licensee and the transferee.

■ A court will not declare a contract illegal unless it expressly contravenes the law or known public policy of a State. (*Board of Education v. Surety Developers, Inc.* (1974), 24 Ill. App. 3d 638, 645, 321 N.E.2d 99, *aff'd* (1975), 63 Ill. 2d 193, 347 N.E.2d 149.) A court will not, however, construe a contract in such a way to render a result contrary to the intention of the parties.

> "In construing a written instrument, its letter should be controlled by its spirit and purpose, bearing in mind that the terms employed are servants and not masters of an intent, and are to be interpreted so as to subserve, and not to subvert, such intent." *United States Trust Co. v. Jones* (1953), 414 Ill. 265, 271, 111 N.E.2d 144.

It is well known that liquor licenses are frequently "sold" in this State. A transfer of a license, such as that accomplished in the instant case, is not unusual. Since the Municipal Code permits these transfers, it is inconsistent to assert that the Code is contrary to public policy.

If the clause in this contract is illegal, therefore, it can only be due to its overbreadth. The provision at issue declares the license to

be the property of the plaintiffs. By itself, this declaration of a property interest would contradict the Liquor Control Act. The parties to the contract, however, did not conduct themselves as if the license actually belonged to the plaintiffs. On the contrary, Mettille applied for the license, met the requirements for the license and paid all fees for its issuance. He was solely responsible for the license.

■ The clause requiring Mettille to "transfer" the license to the plaintiff if Mettille ceased doing business does no more than utilize the language of the ordinance to describe a transferring procedure. The plaintiff owns a building designed for use as a tavern. Undoubtedly, it wanted to protect its ability to efficiently and profitably utilize its building. Therefore, if its lessee were to cease doing business, it wanted the opportunity to continue using the building as a tavern. Towards this objective, the plaintiffs inserted a clause requiring a transfer of the liquor license to plaintiffs. Undoubtedly, the plaintiffs could have drafted this protective clause in a more effective way. Its confusion, though, should not be used to destroy the intent of the parties. By using the language of the ordinance, the contract did no more than require Mettille to surrender the license and request its reissuance to the plaintiff. Mettille's obligation would be satisfied at that point. Since this type of "transfer" is common and the Municipal Code explicitly permits it, this court should not hold that the provision at issue here is void as against public policy.

The defendants' reliance upon *United Breweries* and *Burdin* is unpersuasive. Both of these cases involved agreements to operate saloons under a license issued to another. This, of course, is illegal. In the case at bar, however, Mettille operated a tavern with a license issued to him. Moreover, the contract obligated him to do something the law explicitly permitted him to do.

■ Finally, the defendants contend that they are entitled to summary judgment as to each element of the action for intentional interference with contractual relations. The skeletal record here is insufficient to make such a determination. If anything, the record indicates a genuine dispute over the extent of the defendants' knowledge of the contract and any inducement for its breach. Therefore, summary judgment is inappropriate for this case. *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398.

The judgment of the circuit court of La Salle County is reversed and the cause remanded for trial on the merits.

SCOTT and HEIPLE, JJ., concur.