918 F.2d 959
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert MAINE; Leon M. Schochet; and J. William Holland,
d/b/a Clermont Company, Plaintiff-Appellants,
v.
STANDARD & POOR'S CORPORATION, Defendant-Appellee.
 No. 89-3725.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 23, 1990.
Decided Nov. 19, 1990.
 
 Before WOOD, Jr, and MANION, Circuit Judges and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Three partners and their partnership, Clermont Company, (together, "Clermont") appeal from a summary judgment against them in this diversity case arising under New York law. In the District Court, Clermont sought a declaration that it has a property interest in (1) its idea for an investment fund based on the Standard & Poor's 100 stock index and/or (2) its "unique understanding" of why such an investment fund is worthwhile. As to the first claim, the District Court concluded that Clermont waived any argument it might have and that, in any event, it had failed to rebut the defendant's affidavits. As to the second claim, the District Court concluded that Clermont's "understanding" is not legally protectable. The District Court stated its conclusions in well reasoned Memorandum Orders of September 1, 1989 and November 16, 1989, which are attached to this Order as Appendices A and B, respectively. For the reasons stated in the Memorandum Orders, we affirm.
 
 
 2
 A further point remains. The defendant-appellee Standard & Poor's Corporation ("S & P") contends that Clermont's appeal is frivolous and has moved for sanctions pursuant to Fed.R.App.P. 38. Sanctions are appropriate if "the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." Rosenburg v. Lincoln American Life Insurance Co., 883 F.2d 1328, 1340 (7th Cir.1989), quoting Reid v. United States, 715 F.2d 1148, 1155 (7th Cir.1983). Although we disagree with Clermont's position, it is plausible and honestly presented. S & P's motion for sanctions is denied.
 
 AFFIRMED
 APPENDIX A
 
 3
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 4
 ROBERT F. MAINE, LEON M. SCHOCHET and J. WILLIAM HOLLAND,
 
 
 5
 d/b/a CLERMONT COMPANY, a partnership, Plaintiffs,
 
 
 6
 v.
 
 
 7
 STANDARD & POOR'S CORPORATION, a corporation, Defendant.
 
 No. 88 C 4027
 MEMORANDUM ORDER
 
 8
 PRENTICE H. MARSHALL, District Judge.
 
 
 9
 Plaintiffs Robert F. Maine, Leon M. Schochet, and J. William Holland, all citizens of Illinois, brought this diversity action against Standard & Poor's Corporation ("S & P"), a corporation organized under the laws of New York with its principal place of business in New York City. Plaintiffs' two-count complaint seeks a declaration of confidentiality and proprietary interest in an investment idea (Count I) and damages for tortious interference with contract (Count II).[1] Defendant has moved for summary judgment on both counts.
 
 
 10
 S & P is a financial services company that compiles and maintains stock indexes known as the "S & P 100 Index" and the "S & P 500 Index." In early 1987 plaintiffs developed a proposal for a closed-end investment fund with a portfolio identical to the S & P 100 index and formed a partnership for the purpose of implementing their idea. On April 20, 1987, plaintiffs met in New York with representatives of S & P to obtain a license for the use of its index. Plaintiffs disclosed orally the details of their idea and provided S & P with a written submission entitled "Confidential Preliminary Memorandum For Discussion" that outlined plaintiffs' proposed fund.
 
 
 11
 The parties dispute the results of the meeting. Plaintiffs contend that S & P orally agreed to grant plaintiffs a license and also to maintain the confidentiality of their idea. The only matter left unresolved was plaintiffs' request for an exclusive license; S & P indicated that this might be available if S & P were to act as the fund's investment advisor, but that arrangement would require board approval by S & P's parent company.
 
 
 12
 S & P contends that it informed plaintiffs that it had been considering for some time the concept of a closed-end fund based on the S & P indexes. S & P told plaintiffs that it was currently in the process of deciding whether S & P should participate in the investment management business and, until that determination was finalized, no decision regarding licensing could be made. Further, defendant contends that S & P made no agreement regarding the confidentiality of plaintiffs' idea.
 
 
 13
 In May or June of 1987, plaintiffs presented their proposal to Bear Stearns & Co. Bear Stearns rejected the idea and informed plaintiffs that they had already considered a closed-end fund based on the S & P indexes and concluded that it was not marketable.
 
 
 14
 Plaintiffs then approached The Chicago Corporation ("TCC") for help in obtaining a license from S & P. Plaintiffs felt that TCC would be more successful due to the personal contacts its partners had at S & P. In August of 1987, plaintiffs executed an agreement with TCC whereby plaintiffs assigned to TCC the right to operate such a fund in return for 20% of the revenues generated. TCC agreed to maintain the proposal's confidentiality and return all right, title, and interest to plaintiffs if TCC could not obtain a license from S & P within one year. In September of 1987, TCC executed a waiver agreement purporting to "release S & P from any and all obligation to hold confidential any of the ideas provided to S & P by representatives of the [Clermont] Partnership heretofore in connection with a closed-end investment fund or otherwise and hereby release S & P from any and all liability associated therewith."
 
 A. Count I
 
 15
 In count I of plaintiffs' complaint they allege that the information provided to S & P is "confidential business information in which plaintiff has a protectible business interest," therefore plaintiffs are "entitled to a declaratory judgment that the contents of the memorandum are confidential and that plaintiffs have superior rights as against defendant to such a closed-end investment fund." Defendant contends that plaintiffs' idea for a fund based on the S & P index is neither secret nor novel, and thus not entitled to legal protection.[2]
 
 
 16
 The initial question, ignored by both parties, is which state's law applies to this claim. We first look to Illinois choice of law rules. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-97 (1941). In actions of this nature, Illinois applies the law of the state "where the alleged wrong was committed or the benefit was obtained." Goldberg v. Medtronic, Inc., 686 F.2d 1219, 1225 (7th Cir.1982). S & P is based in New York. Presumably, any use or disclosure of plaintiffs' idea will occur in that state. (We note also that the idea was presented to S & P in New York). Lacking any contrary analysis from the parties, we will apply New York law here. See Goldberg, 686 F.2d at 1225 (breach of confidence or benefit would occur where defendant maintains its manufacturing facilities).
 
 
 17
 Under New York law, intangible concepts not subject to patents or copyrights may still obtain legal protection in some circumstances. Protection may arise from an idea's status as a trade secret. See Lehman v. Dow Jones & Co., Inc., 783 F.2d 285, 297-98 (2nd Cir.1986). New York, like most states, follows the Restatement definition of trade secret:
 
 
 18
 A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. ... It differs from other secret information in a business ... in that it is not simply information as to single or ephemeral events in the conduct of the business.... A trade secret is a process or device for continuous use in the operation of the business.
 
 
 19
 Restatement of Torts Sec. 757 comment b (1939); Lehman, 783 F.2d at 297-98. Trade secrets are actionable if the defendant's "disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him." Restatement of Torts Sec. 757.
 
 
 20
 Ideas that do not qualify as trade secrets may still acquire legal protection through various contractual and equitable principles referred to collectively as "the law of ideas." See Lehman, 783 F.2d at 299; M. Nimmer, Nimmer on Copyright, ch. 16 (1988). Regardless of the specific theory, two prerequisites must be met to prevail under this doctrine. First, there must be the requisite legal relationship between the parties. This may take the form of an express contract, contract implied-in-fact, contract implied-in-law to prevent unjust enrichment, or a fiduciary relationship. See Vantage Point, Inc. v. Parker Bros., Inc., 529 F.Supp. 1204, 1216 (E.D.N.Y.1981), aff'd, 697 F.2d 301 (2nd Cir.1982); M. Nimmer, supra, Sec. 16.01, at 16-4.
 
 
 21
 Second, the idea at issue must be sufficiently novel and concrete to be protectible as a property right. See Ferber v. Sterndent Corp., 51 N.Y.2d 782, ----, 433 N.Y.S.2d 85, 86, 412 N.E.2d 1311, 1312 (1980); Educational Sales Programs, Inc. v. Dreyfus Corporation, 317 N.Y.S.2d 840, 843-45 (N.Y.Sup.Ct.1970). Although early decisions suggested that this requirement may be inappropriate when the parties have an express agreement regarding confidentiality, see, e.g., Krisel v. Duran, 258 F.Supp. 845, 860 & n. 59 (S.D.N.Y.1966), recent decisions have consistently taken the position that the lack of novelty is fatal to any action seeking recovery for the misappropriation of an idea, including those based on express contracts. See, e.g., Murray v. National Broadcasting Co., Inc., 844 F.2d 988, 993-94 (2nd Cir.1988), cert. denied, 109 S.Ct. 391 (1988); McGhan v. Ebersol, 608 F.Supp. 277, 284-85 (S.D.N.Y.1985); Downey v. General Foods Corporation, 31 N.Y.2d 56, ----, 334 N.Y.S.2d 874, 877, 286 N.E.2d 257, 259 (1972); Educational Sales Programs, 317 N.Y.S.2d at 843-45.
 
 
 22
 Here, plaintiffs present a rather unique argument in an attempt to avail themselves of these protections. Defendant has produced unrebutted evidence that there is nothing novel or secret about a closed-end investment fund that bases its portfolio on an S & P index.[3] Plaintiffs concede this, but argue that they were the first to perceive the unique utility of such a fund. As plaintiffs explain:
 
 
 23
 The idea of a closed-end investment fund based on an S & P index, alone, does not appear to be worthwhile because of the discount to net asset value at which nearly all closed-end funds sell. Thus, the genius of the plaintiffs' idea is their understanding of why there would be no such discount for a fund based upon the S & P 100. Schochet recognized that the arbitrage opportunity utilizing the options and the futures to trade off against any discount that might otherwise develop would operate to eliminate the discount nearly completely from such a fund. Schochet was the first person to ever understand this relationship between the various trading opportunities and their affect on the discount.
 
 
 24
 Brief Discussion of Plaintiffs' Confidential and Proprietary Idea at 2. This is the confidential and proprietary information, plaintiffs contend, and it is sufficiently novel to entitle it to protection.
 
 
 25
 We note first that this information does not qualify as a trade secret. In Lehman, 783 F.2d at 297-98, the plaintiff provided the defendant with information regarding the availability of a certain company for merger, and the attractiveness of such an endeavor to defendant. The court held that this was not a "process or device for continuous use in the operation of a business," but rather "information as to single or ephemeral events" that does not qualify as a trade secret under the Restatement definition. In Richter v. Westab, Inc., 529 F.2d 896, 900 (6th Cir.1976), the court held that a marketing concept for notebooks did not meet the Restatement definition, reasoning that it did not "create a continuing competitive advantage because once it is implemented it is exposed for the world to see and for competitors to imitate." Plaintiff's information concerning why an investment fund based on the S & P index is marketable suffers from the same infirmities, and is therefore not actionable as a trade secret.
 
 
 26
 Nor do we believe plaintiff's conception of the closed-end fund's marketability is sufficiently "novel" to entitle it to independent protection as a confidential idea. Under New York law, an idea meets this qualification only if it shows:
 
 
 27
 genuine novelty and invention, and not a merely clever or useful adaption of existing knowledge. Improvement of standard technique or quality, the judicious use of existing means, or the mixture of known ingredients in somewhat different proportions--all the variations on a basic theme--partake more of the nature of elaboration and renovation than of innovation.
 
 
 28
 Educational Sales Programs, 317 N.Y.S.2d at 844 (citations omitted) (suggestion for new application of preexisting sales technique not novel); accord McGhan, 608 F.Supp. at 286-87. Plaintiffs have merely recognized an attractive feature inherent in a previously existing concept. This, we believe, falls into the category of elaboration and renovation rather than innovation and invention, and is therefore not an idea to which property rights attach under New York law.[4]
 
 
 29
 Defendant's motion for summary judgment is granted as to Count I.
 
 B. Count II
 
 30
 Count II of plaintiffs' complaint alleges that defendant, by procuring execution of the waiver agreement with TCC, intentionally caused a breach of plaintiffs' agreement with TCC. Both parties agree that claims for tortious interference with contract require proof of damage resulting from the alleged interference. See, e.g., J.E.L. Realtors, Inc. v. Mettille, 111 Ill.App.3d 987, 989, 444 N.E.2d 750, 751 (1982); Tecler v. Siwek, 542 N.Y.S.2d 56, 57 (N.Y.A.D.1989). Plaintiffs concede that, after almost a year of discovery, they have no evidence of damage. Defendant's motion for summary judgment is therefore granted on Count II.
 
 ORDER
 
 31
 Defendant's motion for summary judgment is granted. Final judgment shall enter in favor of defendant. Plaintiffs are directed to respond to defendant's motion for sanctions by September 15, 1989. Defendant's reply due September 22, 1989. Ruling set for November 22, 1989 at 9:30 a.m.
 
 APPENDIX B
 MEMORANDUM ORDER
 PRENTICE H. MARSHALL, District Judge
 
 32
 On September 1, 1989, we granted summary judgment in this case in favor of defendant. We consider here plaintiffs' motion to reconsider and defendant's motion for sanctions.
 
 A. Plaintiffs' Motion to Reconsider
 
 33
 Plaintiffs' motion to reconsider is denied. Throughout plaintiffs' response brief on the motion for summary judgment, rather than respond to the challenges defendant made regarding the concept of a fund based on an S & P index, plaintiffs argued that defendant had misperceived the "confidential and proprietary aspect" of plaintiffs' idea; what made plaintiffs idea unique, plaintiffs argued, was their perception of "why such a fund is marketable." See Plaintiffs' Memorandum in Opposition at 8-11; Brief Discussion of Plaintiffs' Confidential and Proprietary Idea at 2; Plaintiffs' Response to Defendant's Statement of Uncontested Facts at p 9. We held that this alleged "confidential and proprietary aspect" of plaintiff's idea did not qualify for legal protection under New York law.
 
 
 34
 Plaintiffs now attempt a different approach, arguing that we were wrong to conclude that the concept of a closed-end fund based on an S & P index is not itself a novel idea worthy of proprietary rights. This is so, they contend, because the affidavit of Robert Andrialis stating that S & P had already considered this idea is not supported by the documents defendant supplied as corroborating evidence.
 
 
 35
 We disagree. First of all, it was plaintiffs who chose to recharacterize the idea they sought to protect rather than assert the novelty of the proposed fund itself. Plaintiffs have still not responded to the arguments they skirted by adopting that approach, and we are not inclined to resume briefing now. Plaintiffs chose a theory and must live with its consequences.
 
 
 36
 Second, we stand by our conclusion that there is no genuine fact issue concerning the novelty of a closed-end fund based on an S & P index. Plaintiff Holland testified in his deposition that S & P had previously taken out an ad in the Wall Street Journal soliciting applications for licenses for "funds using [S & P's] index as a base." Holland Deposition at 77. The affidavit of Robert Andrialis states:
 
 
 37
 In late 1986 and throughout much of 1987, S & P was involved in assessing whether it should re-enter the funds management business. One method of re-entry we studied extensively and discussed internally was the formation of a closed-end fund based on one or more of our own S & P 100 or 500 Stock Indexes.
 
 
 38
 Andrialis Affidavit at p 2.
 
 
 39
 Plaintiffs offer no explanation of Holland's testimony. As to the Andrialis affidavit, plaintiffs contend that the documents attached as Appendix 2 to defendant's reply brief do not corroborate this statement, and in fact contradict it. We find no basis for the latter contention. The portions of the documents submitted by defendant and referenced by plaintiffs show that several methods of reentering the funds management business were considered; the affidavit states that one method was a fund based on the indexes. As for the lack of corroboration, this argument is immaterial. An unopposed affidavit needs no corroboration and plaintiffs' allegations of incredibility are insufficient to preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986); Moreau v. Local Union No. 247, 851 F.2d 516, 519 (1st Cir.1988); Walter v. Fiorenzo, 840 F.2d 427, 434-35 (7th Cir.1988).
 
 
 40
 Plaintiffs' motion to reconsider our grant of summary judgment is denied.
 
 B. Plaintiffs' Motion for Sanctions
 
 41
 Rule 11 prohibits both subjectively and objectively frivolous pleadings:
 
 
 42
 First, subjectively viewing the facts, there must be good faith (that is, the paper may not be interposed to harass). Second, there must be reasonable inquiry into both fact and law; ... the legal theory must be objectively warranted by existing law or a good faith argument for the modification of existing law; and the lawyer must believe that the complaint is well grounded in fact.
 
 
 43
 Tabrizi v. Village of Glen Ellyn, 883 F.2d 587, 592 (7th Cir. Aug. 31, 1989) (quotations and citations omitted; emphasis in original).
 
 
 44
 Defendant contends that plaintiffs have failed in both respects. Plaintiffs' complaint, defendant asserts, contains several factual misrepresentations that reasonable inquiry would have revealed. Specifically, defendant refers to the complaint's allegations that the S & P agreed to grant plaintiffs a license; that plaintiffs notified TCC that they were in breach of their contract; that defendant knew of and intended to induce the breach of plaintiffs' agreement with TCC; and that defendant, by inducing the breach of plaintiffs' contract with TCC, caused plaintiffs damage in the amount of $25 million. Defendant also asserts that plaintiffs filed this suit for the improper purpose of coercing a license to the S & P indexes, and conducted the litigation in bad faith. This, defendant contends, is shown by deposition testimony indicating plaintiffs' goal in this litigation was to obtain a license for the use of the S & P indexes; by false representations in plaintiffs' original Rule 39 affidavit; by plaintiffs' tardiness in disclosing certain discovery materials; and by plaintiffs' false assertions regarding a dispute over "counsels' eyes only" restrictions on certain documents.
 
 
 45
 The bulk of defendant's asserted bases require only brief comment. First, we are not persuaded that plaintiffs brought or conducted this suit in bad faith. A license to the S & P index was simply one form of equitable relief plaintiffs sought for their claim. The deposition testimony referenced by defendant no more evidences bad faith than would a plaintiff's statement that he hopes to recover money as a result of his personal injury claim. (Defendant does not contend the request for a license was an objectively frivolous prayer for relief.) The remaining incidents cited by defendant do not rise to the level of subjective bad faith.
 
 
 46
 Second, most of defendant's contentions concerning baseless allegations in the complaint are clearly contradicted by the record. Plaintiffs stated repeatedly in their depositions that they felt an oral agreement concerning licensing had been reached; the letter sent to TCC on December 10, 1987 (defendant's ex. 23) is arguably notice of breach; and defendant's knowledge and intent to induce the breach of the agreement between TCC and plaintiffs can be inferred from the circumstances and the existence and language of the waiver agreement executed between TCC and defendant.
 
 
 47
 The same cannot be said, however, for plaintiffs' allegation of injury and prayer for relief in Count II of the complaint. An essential element of a tortious interference with contract claim is damage. J.E.L. Realtors, Inc. v. Mettille, 111 Ill.App.3d 987, 989, 444 N.E.2d 750, 751 (1982); Tecler v. Siwek, 542 N.Y.S.2d 56, 57 (N.Y.A.D.1989). Plaintiffs alleged in their complaint that defendant, by procuring the waiver agreement with TCC, caused plaintiffs substantial damage, and the prayer for relief requests $25 million as compensation. Plaintiffs conceded in their response to the motion for summary judgment that they have no evidence of any monetary damage resulting from the acts alleged in Count II.
 
 
 48
 Count II of the complaint is therefore not "well grounded in fact." We agree with defendant that reasonable inquiry before filing the complaint would have revealed that there was, at best, only a threat that S & P might use or disclose plaintiffs' idea sometime in the future. There was not, however, any indication that the execution of the waiver agreement with TCC had caused $25 million of damages to plaintiffs.[1] In these circumstances we have no choice but to impose appropriate sanctions. See Brown v. Federation of State Medical Boards, 830 F.2d 1429, 1433 (7th Cir.1987) (sanctions are mandatory when pleading is not well grounded in fact); Diversified Technologies Corp. v. Jerome Technologies, Inc., 118 F.R.D. 445, 448-51 (N.D.Ill.1988) (sanctions appropriate if relief sought does not bear reasonable relation to injuries in fact sustained, citing Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1162-63 (9th Cir.1987)).
 
 
 49
 The primary focus of both parties' energies has been on the issues raised by Count I. Accordingly, we conclude that a sanction of $1,000 is appropriate.
 
 
 50
 Plaintiffs' motion to reconsider the court's grant of summary judgment is denied. Judgment will enter in favor of the defendant and against plaintiffs jointly and severally in the amount of $1,000 as and for a sanction under Rule 11, Fed.R.Civ.P.
 
 
 
 [1]
 By order dated 12/13/88, plaintiffs' request for injunctive relief was stricken
 
 
 [2]
 S & P also contends that Count I must be dismissed on ripeness grounds because S & P has not threatened to use or disclose plaintiffs' idea. Our disposition makes it unnecessary to address this argument
 
 
 [3]
 S & P has submitted an affidavit and corroborating documents establishing that S & P had considered previously the concept of such funds. See Affidavit of Robert Andrialis & S & P's Reply Memorandum, Appendix 2; see also Holland deposition, Plaintiffs' Tab 2, at 77. Also, plaintiffs concede that Bear Stearns had considered and rejected the concept of such a fund. Plaintiffs' Response to Defendant's Statement of Uncontested Facts, p 9
 
 
 [4]
 Plaintiffs also note without elaboration that other unique aspects of their idea include the marketing of the fund, its approval by the Options Clearing Corporation, and its listing on various foreign exchanges for 24 hour trading. Concerning marketing of the fund, plaintiffs have offered no evidence of a unique and concrete plan. Nor is there anything inherently unique about obtaining Options Clearing Corporation approval for a security or listing it on foreign exchanges. Without more, these "aspects" are nothing more than refinements on existing knowledge
 
 
 [1]
 Plaintiffs' only response to defendant's arguments on this point is that $25 million represents a reasonable estimate of the value of their idea. There is no explanation of how this bears any relation to damages actually sustained as a result of the waiver agreement executed by TCC